DICKERSON, Plaintiff-Appellant, v. EMMCO INSURANCE CO., INC., Defendant-Appellee.

Ohio Appeals, Seventh District, Mahoning County.

No. 3039—Decided April 13, 1945

W. M. Howard, Youngstown, for Plaintiff-Appellant.
Stephens & Young, Youngstown, for Defendant-Appellee.

## OPINION

By PHILLIPS, J.

This is an appeal on questions of law from a judgment of the court of common pleas entered upon a jury verdict for defendant.

For a consideration defendant, an Indiana insurance corporation licensed to transact business in Ohio, issued a NATIONAL STANDARD AUTOMOBILE POLICY to plaintiff upon his Ford truck in which it agreed "to pay" plaintiff for direct loss of or damage to the automobile, hereinafter called loss, accidentally sustained under the coverage namely:—

"C. Theft (Broad Form): Loss of or damage to the automobile caused by larceny, robbery or pilferage."

The evidence discloses that during the life of the policy plaintiff's driver parked the insured truck, which was headed westerly, on Lexington Avenue at a place thereon "about four or five feet" from the northerly curb thereof and approximately "a couple of houses" east of Covington Street, which intersects Lexington Avenue at right angles within the corporate limits of Youngstown, Ohio, for the purpose of repairing, a blown-out tire; and that he was accompanied on the trip by a co-employee, a minor named Lewis, who was unable and unlicensed to drive automobiles in Ohio; that while the driver

was away from the truck securing tools and material to repair the tire Lewis attempted, as he testified, "to move the truck closer to the northerly curb of Lexington Avenue."; that he drove it west on Lexington Avenue, south on Covington street "then put" his "foot on the gas too hard and the truck jumped off from" him; that he "went to grab the foot brake" and "hit the curb and cut through a field" situated on the north-easterly corner of Covington Street and Parmalee Avenues, then collided with a house situated in the southeasterly angle created by the intersection of those two streets; that as a result of such collision plaintiff's truck was damaged in the sum of $211.40, for the recovery of which amount he sued the defendant after making demand for the payment thereof.

Plaintiff testified that Lewis had no right on the truck; that his sole duty was to shine shoes on a commission basis at plaintiff's "pressing club." Lewis and the driver testified that Lewis was sent with the driver on this and prior occasions to make certain that merchandise was not stolen from the truck while the driver made deliveries, or to make deliveries while the driver remained on the truck to guard it; that oft-times Lewis had accompanied plaintiff while he was making deliveries.

Lewis testified that plaintiff had given him driving lessons on occasions prior to the day of the collision; that plaintiff paid him $4.00 a week; that he did "pressing" and did "a little cleaning for him" and went "on the truck"; that "every time" he "got ready to shine shoes he called" him "to do a little pressing and if" he "wasn't pressing" he "was going on the truck."

Briefly but substantially such is the testimony upon which we are asked to, but cannot, reverse the judgment of the trial court on the urged grounds that the court erred "in failing to sustain the motion of plaintiff for a verdict directed in his favor made at the close of all the evidence," or that "the verdict of the jury is contrary to the manifest weight of the evidence."

This conclusion compels consideration of the urged ground of error that the trial judge erred prejudicially to plaintiff "in refusing to instruct the jury on the issue of larceny of an automobile as defined by §12619 .GC."

The record discloses that at the conclusion of his general charge to the jury the trial judge asked counsel:—

"Have you anything else I have omitted or been in error about you gentlemen care to suggest?"

"Mr. Howard: Your Honor, about the definition, in regard to 12619 —"

"COURT: I am sorry but the only statute that I feel under the terms of this policy that I can use here is the statute defining larceny which I have done."

"MR. HOWARD: Exception."

"COURT: Your request is that I give in connection with the term larceny the terms of §12619 GC?"

"MR. HOWARD: Yes, sir."

"COURT: I cannot do it."

"MR. HOWARD: Exception."

The trial judge charged the jury inter alia as follows:

"* * * So that we will confine our inquiry to whether there was a larceny and whether as a direct consequence of that larceny damage to the truck resulted, and if so how much was the loss. So the essential thing is to determine whether these facts in evidence, these things that have been shown you constitute larceny."

"Larceny is a crime in this state and there is nothing that is a crime in this state unless it is defined in a statute passed by the legislature. We often in our loose language say of an act, 'Why, that is a crime.' As I said before we use language very loosely but in Ohio nothing is a crime unless it is defined as such by the statute, and we have a statute which defines larceny and, fortunately, it is a very simple definition. 'Whoever steals anything of value is guilty of larceny.' Now, to steal has in it two main elements; it is to take a piece of personal property because you cannot steal land, you cannot move it away. It is to take a piece of property and move it or carry it away with felonious intent. It has to be property of someone else because you cannot steal your own property. You can take and move a piece of personal property without the owner's consent for a purpose which does not make that taking and moving larceny. Larceny is the taking of personal property of someone else without authority with the intent to do something with that property solely and only for your own benefit in taking it. Now, that benefit to yourself may be that you intend to use it for yourself or to sell it to somebody or to do something else with it, or it may be for a very temporary period to use it wholly for your own benefit or for something redounding to yourself. If personal property is taken with that

intent without the owner's consent technically in the eyes of the law that is stealing."

Sec. 12619 GC, provides in part:

"Whoever steals any motor vehicle, or whoever purposely takes, drives or operates any motor vehicle without the consent of the owner thereof * * * shall, for the first offense, be imprisoned in the penitentiary * * *."

Regardless of what was the actual intent of Lewis in attempting to drive plaintiff's truck his undisputed testimony as to such intent was "to pull it over to the curb a little." Clearly such evidence was insufficient to warrant a finding that Lewis was guilty of theft or larceny of plaintiff's truck.

Counsel for plaintiff contended in oral argument that Lewis was guilty of driving or operating defendant's truck without his consent, which as far as the record discloses is true, and urges that by reason thereof Lewis was guilty of larceny and plaintiff was covered under the quoted provisions of the policy issued to him by defendant. Upon the record presented we do not think so.

Defendant was liable to plaintiff "for direct loss of or damage to the automobile, hereinafter called loss, accidentally sustained" "by larceny," not driving or operating plaintiff's truck without his consent.

We are of opinion that there is no ambiguity in the policy under consideration. This case is easily distinguished from the cited case of Block et al v. Standard Ins. Co., of New York, 54 N. E. (2d) 822 cited and relied upon by plaintiff. In the instant case the policy was not a "comprehensive policy" as in that case.

The trial court gave a proper charge on theft. Without further comment we reach the conclusion that the trial court did not err prejudicially to plaintiff "in overruling the motion of plaintiff for a new trial" or in any other respects urged by plaintiff, and that the judgment of the trial court must be and hereby is affirmed.

NICHOLS, PJ, and CARTER, J, concur in judgment.