## Rowan County Lumber Co. et al. v. Kautz.

(Decided Dec. 16, 1932.)

J. W. RILEY and GROVER THOMPSON for appellants.

CLAY & HOGGE for appellee.

OPINION OF THE COURT BY HOBSON, COMMISSIONER—Affirming in part and Reversing in part.

The Rowan County Lumber Company, a corporation, had in its service George J. Kautz, who was injured on April 13, 1927. He applied to the Workmen's Compensation Board, which awarded him compensation

on January 3, 1928, in the sum of $2,268.57. The award was not paid, and on March 14, 1928, he obtained a judgment for the amount of the award in the Rowan circuit court. Execution was issued on the judgment on March 24, and on the same day was returned "no property found." On March 27, 1928, he filed this action in the Rowan circuit court to enforce satisfaction of his judgment under section 439 of the Civil Code of Practice, naming as defendants to the action the Rowan County Lumber Company, McCracken & McCall, Ralph McCracken, John E. McCall, and Hendricks, Moore & Co. The issues were made up, proof was taken, and on final hearing the court entered judgment in favor of the plaintiff against McCracken & McCall, a corporation, and Ralph McCracken individually for the sum of $952.58, with interest from March 27, 1928, and its costs. From this judgment McCracken & McCall and Ralph McCracken appeal.

The Rowan County Lumber Company was incorporated on July 19, 1923. The incorporators were John E. McCall, who took 150 shares of stock; George B. Martin, 50 shares; Ralph McCracken, 50 shares, as stated in the articles of incorporation. The total number of shares was 500, and each share was of par value of $100. The first meeting of the stockholders was held on August 10, 1923, by the stockholders above named, and it was there resolved that at least 20 per cent. of the stock subscribed be paid to the treasurer in that month. At a regular meeting of the stockholders on January 13, 1925, this entry was made on the minute book:

"The stock books of the company were examined and it was found that the stock thereof has been issued and stands upon the books of the company as follows:

| | | |
|---|---|---|
| John E. McCall | Catlettsburg, Ky. | 241 shares |
| George B. Martin | Catlettsburg, Ky. | 241 shares |
| Ralph McCracken | Lexington, Ky. | 10 shares |
| N. M. Riddle | Ashland, Ky. | 5 shares |
| Alex Josselson | Catlettsburg, Ky. | 3 shares" |

McCracken & McCall was a corporation located at Lexington, Ky., and the whole stock of the corporation was owned by McCall and McCracken and wife. They were the only stockholders.

McCall was the president of the Rowan County Lumber Company and McCracken was the vice president. For several years the lumber cut by the Rowan County Lumber Company was shipped to McCracken & McCall and was sold by it on a commission basis. The lumber company got behind, as shown by a meeting held on January 11, 1927, and on March 28, 1927, the following order was entered:

"Resolved that the entire management of operation and sales of The Rowan County Lbr. Co. be, and the same is now placed in the hands of W. H. Dawkins until its business is completely closed with full power to fix wages and salaries of all employees and to hire and fire them at will; to sell the logs and lumber in whole or parts to such customer or customers and at price or prices which in his business judgment may seem wise and proper under all the circumstances."

Dawkins took charge of all the lumber and sold it to McCracken & McCall on April 6, 1927, in round numbers for $31,000, $24,000 of which was then paid, and the remainder before May 31, 1927. The money was paid to the treasurer of the company, who kept an office at Ashland and was the wife of John McCall. The money was all paid out, as appears from the record, on the debts of the lumber company. In the account of McCracken & McCall for the sales made by them on commission, it appears from the book that at the close of this account there was a balance due from McCracken & McCall to the lumber company of $952.58, and this is the only asset of that company shown to be in existence by the proof for Kautz. The only other thing in controversy is the 10 shares of stock of Ralph McCracken. McCracken says that he was only a dummy stockholder; that he really never paid for the stock. He gave a note for $1,000 to the company for the stock. This note he says was lost by the company; that he afterwards turned over this 10 shares of stock to John McCall, and, as he insists, the books show McCall paid the money to the company. The books, as an expert testifies, show these facts: George B. Martin for capital stock, $24,100, cash and notes, credits $25,-836, overpaid, $1,736. John E. McCall for capital stock, $24,100, credits $25,282.62, overpaid, $1,182.63. Nellie M. Riddles, 5 shares paid by work. Alex Josselson, 3

shares paid by note. But these figures only make 241 plus 241, plus 5, plus 3, equals 490 shares; the total stock was 500 shares.

■ *As to the judgment against McCracken & Mc-Call.*—While the figures on the book, when the debits are subtracted from the credits, show a balance of $952.58, the account was never balanced, and the footings are in pencil. In this account McCracken & McCall were charged, among other things, with a carload of lumber shipped to Milwaukee and invoiced at $494.18. As shown by the proof of Ralph McCracken and Mrs. Goldie McCall, which is uncontradicted, this carload of lumber was rejected at Milwaukee as defective and on a subsequent sale failed to pay charges, so that nothing was received from it. In addition to this, as shown by the testimony of these witnesses, McCracken & McCall made a sale of lumber amounting to $1,925, and sent the check to the lumber company. They were entitled to a commission of $458.49. Mrs. McCall, who was the bookkeeper, subtracted the commission from the amount of the check and credited McCracken & McCall on the books with the balance, $1,466.51. In this way the credit of $458.49, to which they were entitled for a commission, was omitted. The testimony of these witnesses is not only uncontradicted, but it is confirmed by the book and the fact that no claim was ever asserted by the lumber company against McCracken & McCall for this money. The court therefore concludes that the judgment against McCracken & McCall is not warranted by the evidence.

■ *As to the judgment against Ralph McCracken.* —It is unquestioned that Ralph McCracken subscribed for 50 shares of this stock in the articles of incorporation, and, though he did not take the 50 shares, he did take 20 per cent. thereof, and execute his note to the company for $1,000. He was also the vice president of the company. His own evidence as to selling this stock is unsatisfactory, as shown by these questions and answers:

"Q. You did not get anything for your ten shares? A. Never gave anything for it and never got anything back except a note that was to be liquidated from the proceeds of the profits of the firm up until it was liquidated and they contend that they lost my note. * * *

"Q. Did you ever pay the note? A. I didn't."

John McCall only claimed to own 241 shares, he had paid in $25,282.62, and he claimed to have overpaid $1,182.63. If he owned the 10 shares of stock issued to McCracken, he had not overpaid this amount. There is an entry on the journal charging the company with the proceeds of the McCracken note, but there is nothing in this entry showing that McCall made this payment. McCracken admits that he did not pay it, and nothing on the books is shown, except this entry in the journal, which is not ordinarily the place to look to see whether money has actually been paid into a business. If it was shown that the lumber company kept an account with the bank and that this money had gone into that account, a different question would be presented. Upon all the facts the court reaches the conclusion that the evidence is not sufficient to show that this stock was ever paid for, and the judgment against Ralph McCracken cannot be disturbed. There is no cross-appeal, and he cannot complain that the judgment is for less than it should have been.

The subscriber for stock in a corporation, who has not paid for his stock, is under the statute liable to the creditors of the corporation for the amount so unpaid. Ky. Stats., sec. 547; Smith v. Gower, 2 Duv. 17. This liability may not be defeated by doubtful evidence. The facts must be clearly established. Kentucky Mut. Inv. Co.'s Assignee v. Schaefer, 120 Ky. 227, 85 S. W. 1098, 27 Ky. Law Rep. 657. In Wallace & Tiernan Co. v. Davis, 227 Ky. 71, 11 S. W. (2d) 990, 991, the court said:

"It is insisted for Morrison that he is not liable because he had sold his stock to Davis. The proof is that he made a contract with Davis some 18 months before the sale to the city, by which he agreed to sell Davis his stock and Davis was to pay him in certain installments. But he did not deliver the stock to Davis; no change was made on the stock book. He continued as the holder of the stock on the record, and in fact it clearly appears that he was not to deliver the stock until he got the money. When the sale was made he did get the money, and then delivered the stock. His liability to the creditors of the corporation was in no man-

ner affected by this arrangement, whatever his rights may be as between him and Davis."

The evidence here is clear that McCracken continued to have an interest in the profits of the lumber company and no change was made on the stock book.

In 14 C. J. p. 1024, sec. 1592, the general rule is thus stated:

"A mere executory agreement to transfer shares of stock does not terminate the liability of the stockholder. And in order that a stock transfer may have the effect of releasing the transferor from further liabilities, the prescribed formalities must be observed."

Here under the evidence no formalities were observed, and McCracken continued liable as before.

No demurrer was filed to the petition. Answers were filed, and by consent all pleadings stood controverted of record. If there was any defect in the petition, it was cured by the proof and the subsequent proceedings, and objection on this ground cannot be made for the first time in this court.

The sheriff was not required to wait until the return day of the execution before he could return it no property found. He has a discretion in such matters. In 23 C. J. p. 793, sec. 864, the rule is thus stated:

"A return of nulla bona may be made, under the instructions of the judgment creditor, immediately after it has become evident that the debtor has no property which can be seized."

The return here was so made in order that the plaintiff might bring at once his action to enforce satisfaction of his judgment. Like proceedings were sustained in Slaughter v. Mattingly, 155 Ky. 407, 159 S. W. 980.

A personal judgment was properly entered against Ralph McCracken. There was no judgment against him in the former action.

The judgment against McCracken & McCall is reversed, with directions to dismiss the petition as to it. The judgment against Ralph McCracken is affirmed.