EISWIRTH CONSTRUCTION AND EQUIPMENT COMPANY, a Corporation, Appellant, v. GLENN FALLS INSURANCE COMPANY, a Corporation, Respondent.—240 S. W. 2d 973.

St. Louis Court of Appeals. Opinion filed June 19, 1951.

Appellant's motion for rehearing, or, in the alternative, for a transfer of cause to the Supreme Court of Missouri overruled July 6, 1951.

714

*Barnhart & Wood, C. V. Barnhart, Marvin S. Wood* and *James D. Cullen,* for Appellant.

*Willson, Cunningham & McClellan, J. H. Cunningham, Jr., Richard D. Gunn,* for Respondent.

McCULLEN, J.—This suit was brought by appellant as plaintiff against respondent as defendant to recover the sum of $1200.00 under a policy of automobile insurance issued by the defendant insurance company to the plaintiff construction and equipment company. A jury was waived by the parties and a trial before the court on an agreed statement of facts resulted in a finding and judgment by the court in favor of plaintiff and against defendant in the sum of $180.10 with interest and costs. After an unavailing motion for a new trial plaintiff duly appealed.

The agreed statement of facts filed in the cause upon which the case was tried is as follows:

"It is hereby agreed between the parties to the above cause that a jury is waived and that this case shall be submitted to the court for decision solely upon the following facts which are agreed to be true and correct, to-wit:

"1. Plaintiff and defendant are private corporations duly licensed to do business in the State of Missouri.

"2. That on or about August 25, 1947, defendant in consideration of premium paid duly executed and delivered to plaintiff a policy of insurance whereby the defendant insured plaintiff against loss and damage to a 1947 Dodge one ton truck for a period of one year from said date of issuance of said policy caused by the following hazards, to-wit:

"'A Comprehensive—Loss of or Damage to the Automobile, Except by Collision but including Fire, Theft and Windstorm
(Insurance coverage defined)

Coverage A—Comprehensive—Loss of or Damage to the Automobile, Except by Collision: Any loss of or damage to the automobile except loss caused by collision of the automobile with another object or by upset of the automobile or by collision of the automobile with vehicle to which it is attached. Breakage of glass and loss caused by missiles, falling objects, fire, theft, explosion, earthquake, windstorm, hail, water, flood, vandalism, riot or civil commotion shall not be deemed loss caused by collision or upset.'

"3. That at all times herein mentioned plaintiff was the owner of the 1947 model Dodge one ton truck referred to in Paragraph Two. That one Thomas Norton was employed by plaintiff as a truck driver on August 29, 1947 and thereafter he drove the insured vehicle, it being his practice to pick the truck up from plaintiff's parking lot on Louisiana and Gravois on the morning of every working day and return it at evening. On a few instances for the employee's convenience and after securing special permission to do so Norton was allowed to take the truck to his home and park it there overnight and on these occasions was instructed

not to use the truck for his own personal pleasure or business and that to do so would result in immediate dismissal.

"4. That during the late afternoon of Friday, November 21, 1947, Norton telephoned plaintiff's secretary-treasurer at her home advising that he had several stops to make in order to deliver a payroll which would put him home late and result in overtime employment if he were required to return the truck to its usual parking place. He then asked for and was given permission by plaintiff's secretary-treasurer to take the truck to his home, but was then instructed by plaintiff's secretary-treasurer not to use said truck for his own benefit and to return the truck to plaintiff's parking lot the following morning by 7:30 a.m. That the aforesaid authorized possession of plaintiff's truck by said Norton was not a bailment lease, conditional sale, mortgage or other encumbrance thereof. On Saturday, November 22, 1947, at 6:00 a.m., Thomas Norton left St. Louis without plaintiff's knowledge, consent or permission and thereafter drove said truck on a mission for his sole use and benefit and while being so used the truck was overturned and run off U. S. Highway #61 at a point approximately five miles north of Wentzville, Missouri, whereby said truck was extensively damaged. That Norton immediately abandoned said truck at said location and returned to St. Louis, a distance of approximately forty miles, by a scheduled motor bus line; that plaintiff heard nothing further relative to Norton, nor the truck until approximately 1:00 p.m. of that date when an unidentified person telephoned plaintiff's president's home reporting that the truck was wrecked on U.S. Highway #40 near Wentzville, Missouri. At the time of said call neither Mr. Ed Eiswirth, president of plaintiff, or Mrs. Ellen Eiswirth, secretary-treasurer of plaintiff, were at home, and were advised of said call later and immediately advised defendant's agent Mr. Bartozch of said call. Norton claims to have made this call.

"5. Plaintiff's president thereafter endeavored to locate Norton at his home and being unable to contact Norton at his home or other places Norton was known to have frequented, plaintiff's president made a trip to Wentzville, Missouri, in search of said truck, reporting the incident to the Missouri State Highway Patrol, which had no prior knowledge of the matter, while he was enroute to Wentzville. Plaintiff's president was unable to locate said truck along Highway #40 for several miles on either side of Wentzville, Missouri, and thereafter returned to St. Louis and upon further search for Norton located him at his home and discharged him. That Norton has not thereafter been further employed by the plaintiff, although he has since endeavored to regain his employment.

"6. That on Sunday, November 23, 1949, plaintiff's president and secretary-treasurer in further search for said truck located the same in a ditch adjacent to U. S. Highway #61 approximately five miles north of Wentzville, Missouri. Evidence at the scene clearly indicated that the truck had overturned several times, and by reason thereof was extensively damaged; all windshield, side door and head light glass being broken and all detachable items and accessories having been removed therefrom by person or persons unknown.

"7. Plaintiff's officers reported the occurrence to the St. Louis Police, Norton was arrested on plaintiff's charge of theft, and after a conference, the office of the Circuit Attorney, St. Louis, declined to issue a warrant.

"8. The aforesaid use of said truck by Norton, in going from St. Louis to Wentzville, or wherever he was going had he not wrecked plaintiff's said truck, was without the permission, knowledge or consent of plaintiff and against plaintiff's instruction not to use said truck and to return the truck at 7:30 a.m. the following day as hereinabove set out.

"9. That the truck was overturned and caused to be damaged while being used without plaintiff's authority as aforesaid. That glass breakage amounted to the sum of $34.23; that after said truck had been abandoned by Norton person or persons unknown removed from said truck all detachable items and accessories the replacement value of which was $145.87, for which latter amount defendant has and still does tender payment to plaintiff; that the entire damage to plaintiff's truck by reason of the foregoing and including the foregoing is $737.50.

"10 That at all times herein mentioned the name of the plaintiff corporation was painted in large letters on the side of said truck.

"11. Plaintiff has given due notice and proof of such loss and damages to defendant, and defendant denied all liability for such loss and damage, except as above admitted, and this suit was thereafter filed.

"12. That defendant's Policy #SB-62587 attached hereto and marked Exhibit 'A' is hereby incorporated herein by reference and made a part hereof to the same extent as if herein fully set out.

"Executed this 14 day of October, 1949."

The above agreed statement of facts was signed by attorneys for plaintiff and attorneys for defendant.

One of the insuring agreements in the policy was as follows: "COVERAGE D—THEFT (BROAD FORM): Loss of or damage to the automobile caused by theft, larceny, robbery or pilferage."

The finding and judgment of the court in the sum of $180.10 in favor of plaintiff is made up of two items as follows: Loss due to glass breakage, $34.23, and $145.87 for loss of detachable accessories and items taken from the truck in question.

Plaintiff contends that the judgment of the trial court in his favor although for the right party was against the weight of the evidence in that the trial court failed to award plaintiff all the damages which it sustained and which are due to it under the insurance policy sued on.

This case having been tried before the court without a jury, it is our duty to review the whole case and reach our own conclusions "upon both the law and the evidence as in suits of an equitable nature." Section 114(d) of our Civil Code, Laws Mo. 1943, p. 388, Mo. R.S.A. Section 847.114(d), now section 510.310 Subdivision 4 R. S. Mo. 1949; House v. Santa Fe Trail Transp. Co., Mo., 217 S.W. 2d 382; Reasor v. Marshall, 359 Mo. 130, 221 S.W. 2d 111.

The above statute requires that in cases tried without a jury, such as this, the appellate court shall have due regard for the opportunity of the trial court to judge of the credibility of the witnesses. However, since this case was submitted upon an agreed statement of facts and no witnesses appeared before the trial judge, we are in the same position as the trial judge and this appeal is in effect a trial de novo.

Plaintiff contends that the taking of the truck under the facts as agreed to by the parties constituted a "theft" within the meaning of the insurance policy and that plaintiff is entitled to the full recovery for all the damage thereby suffered. The defendant insurer contends that the facts as agreed to do not constitute theft, and that the amount of the judgment rendered is all plaintiff is entitled to.

It is the established law of this state that where an insurance policy is open to different constructions it is the duty of the court to give it that construction which is most favorable to the insured. Wendorff v. Missouri State Life Insurance Co., 318 Mo. 363, 1 S. W. 2d 99; Packard Mfg. Co., v. Indiana Lumbermens Mut. Ins. Co., 356 Mo. 687, 203 S.W. 2d 415.

However, we do not regard the word "theft" as used in the policy herein as an ambiguous word. It is a word generally and commonly used and understood to convey the same meaning as the word "steal." To "steal" is to commit a "theft" in the usual and ordinary acceptation of the words. In order to have a "theft" something must be stolen by a thief. The technical legal name for the act of "stealing" or the commission of "theft" is "larceny," but there can be no "stealing" or "theft" or "larceny" unless the person committing the act shows an intention permanently to deprive the owner of the property involved.

The word "steal" in general "has a fixed and well-defined meaning, a uniform signification, in common, as well as in legal, parlance, and

in its common, every-day use and general acceptation, *it is as well understood as any word in the English language.* The primary idea of the word is said to be a clandestine, concealed or secret taking, a taking by stealth and concealment; but it has been said that, in its popular and broader or colloquial sense, it may signify any wrongful and unlawful taking, of person, or of property or wrongful conversion of the same." 59 C. J. page 1222, section 1 A. (Emphasis ours.)

There is no definition of the word "theft" in the policy nor is there any definition of that word in the statutes of this state. Therefore, the word "theft" as used in the policy must be interpreted in its plain, ordinary and popular sense and not in a technical or scientific sense. Dolph v. Maryland Casualty Co., 303 Mo. 534, 261 S. W. 330.

The word "theft" is defined in Webster's New International Dictionary Second Edition, Unabridged, page 2618, as follows: "Act of Stealing; specif., the felonious taking and removing of personal property, with intent to deprive the rightful owner of it; larceny. In various penal codes in the United States theft is defined so as to include embezzlement and in some cases 'any unlawful acquisition of property.'"

In 3 Bouvier's Law Dictionary Rawle's Third Edition, page 3267, theft is defined as "A popular term for larceny. It is a wider term than larceny and includes other forms of wrongful deprivation of property of another * * * Acts constituting embezzlement or swindling may be properly so called."

In Black's Law Dictionary Third Edition, page 1725, the word is defined as follows: "Theft is the fraudulent taking of corporeal personal property belonging to another, from his possession, or from the possession of some person holding the same for him, without his consent, with intent to deprive the owner of the value of the same, and to appropriate it to the use or benefit of the person taking." Following the above definition in Black's Dictionary is a long list of cases from courts of last resort of various states throughout the country as authority for the definition given.

Each of the parties herein has cited many cases to support its contention, but after all the main question we have to determine in this case is one of fact. Under the agreed statement of facts and the word "theft" in the policy we must determine whether or not Norton, plaintiff's truck driver, in using plaintiff's truck solely for his own purposes, contrary to the express orders of his employer, by taking it to the place where it was found damaged in the ditch near Wentzville, Missouri, feloniously intended to deprive plaintiff of the truck, or convert it to his own use permanently.

A consideration of the reasoning in many cases holding that there can be no "theft" within the meaning of such a policy as we have before us without evidence showing an intent to deprive the owner permanently of his property, as well as the few cases holding to the con-

trary, leads us to the conclusion that the element of such felonious intent by Norton is absent in the case at bar and we cannot properly hold there was a "theft" under the agreed facts. A holding that there was a theft in this case would be equivalent to branding Norton as a thief. We would not be justified in so holding in the absence of evidence from which it could reasonably be inferred that he entertained a criminal intent to deprive his employer of its truck permanently.

We find nothing whatsoever in the agreed statement of facts to show or to warrant an inference that Norton had any intention of stealing the truck or converting it to his own use permanently. On the contrary the facts agreed to by the parties convince us as triers of the fact that Norton had no such criminal intention. His act in calling the home of his employer on the same day of the occurrence and informing him of what had happened to the truck and where it could be found completely negatives any intention on Norton's part to steal the truck. Even though there was a slight mistake in the description given of the number of the highway where the truck could be found, the message of the anonymous informant, who according to the agreed statement was Norton, named the City of Wentzville which was sufficient to lead to the finding of the truck in that locality. Such conduct on the part of Norton shows that he had no intention of depriving plaintiff of the truck or of converting it to his own use permanently.

Further considering the actions and conduct of Norton, we find nothing in the agreed statement of facts to show any consciousness of guilt on his part of having committed the crime of stealing or theft. On the contrary, he not only did not flee from his home after running the truck into the ditch and overturning it, but returned to his home the same day directly by way of a regularly scheduled bus. He was found at his home on the same day and was discharged by his employer, the plaintiff herein.

Furthermore, according to the agreed statement of facts, Norton made an effort to regain his employment with the plaintiff. All of these actions and conduct of Norton, as shown by the agreed statement of facts, negative any idea of his having entertained any intention of depriving plaintiff of its truck or of converting it to his own use permanently.

The burden was on plaintiff to adduce evidence to show that the taking of the truck constituted a "theft" within the meaning of the policy. Under the agreed statement of facts plaintiff has shown nothing more than a temporary unauthorized use of the truck by Norton under circumstances which not only do not show a theft within the ordinarily accepted meaning of that word, that is, an intention permanently to deprive the owner thereof, but on the contrary show that there was no such intention on the part of Norton.

Some states have statutes making the unauthorized use of motor vehicles a crime. A statute of Missouri, which was in effect at the time of the damage to the truck herein was section 8398 R.S. Mo. 1939, Mo. R.S.A. Section 8398, now section 560.175 R.S. Mo. 1949, in two of its subdivisions provided as follows:

"1. No person shall drive, operate, use or tamper with a motor vehicle or trailer without the permission of the owner thereof.

\* \* \* \* \* \* \* \*

"3. The provisions of this section shall apply to any person employed by the owner of such motor vehicle as a chauffer or registered operator if said motor vehicle is driven or operated, used or tampered with without the owner's knowledge or expressed consent, or in violation of his instructions."

The fact that the state as a matter of public policy has enacted a statute making the unauthorized use of a motor vehicle a crime can have no bearing on a private contract between parties providing for insurance covering such a vehicle against loss or damage by "theft." A mere "unauthorized use" plainly lacks the essential element of the criminal intent permanently to deprive the owner of his property. Without such intent there can be no "theft" as that word is commonly used and understood.

A few courts have held that an intent to deprive the owner of his automobile permanently need not be shown in a case involving an automobile insurance policy insuring against theft. Among them is Toms v. Hartford Fire Ins. Co. of Hartford, Conn., 146 Ohio St. 39, 63 N. E. 2d 909, wherein a garage attendant took an automobile from a garage for a short trip with the intention of returning it. A recovery under the policy was allowed in that case.

In a case cited by plaintiff herein, namely, Pennsylvania Indemnity Fire Corp. v. Aldridge, 117 Fed. 2d 774, the court pointed out that there were some cases wherein misappropriation of automobiles was held to be theft within the meaning of that word as used in insurance policies although the evidence would have been insufficient to prove common law larceny. In said Aldridge case the court conceded that the numerical weight of authority was opposed to the position it took in allowing a recovery therein under the policy covering theft. In that case the person who took the car had been given the keys of the car by its owner for the purpose of having it cleaned and polished. He took the car and went for a drive with some friends without permission of the owner. He accidentally wrecked the car when he was returning and was about a mile from the owner's home. In said Aldridge case the court based its decision on the ground that the person involved in the taking of the automobile, "intended, in this case, to make use of the misappropriated car in a manner inconsistent with the property rights of appellee." 117 Fed. 2d l.c. 776. Involved

in the Aldridge case, supra, was the District of Columbia Code classifying crimes as follows: "Grand larceny; petit larceny; *unauthorized use of vehicles;* * * *." (Emphasis appears in the court's opinion.)

The "unauthorized use" of the vehicle was undoubtedly a crime in the Aldridge case, supra, because the statute specifically made such act a crime, but it did not thereby become a "theft" within the universally accepted meaning of that word.

With the greatest respect for the courts that rendered the decisions in the Toms and Aldridge cases, supra, we find ourselves unable to agree with their conclusions. As we view it, the stronger reasoning as well as the greater weight of authority lead to the contrary conclusion.

The question of what constitutes "theft" within the meaning of an insurance policy covering loss and damage to an automobile has been the subject of many decisions by the courts of many of our states. A brief resume of some of such decisions shows a heavy preponderance in favor of the view that in order to show theft there must be evidence of a criminal intent to deprive the owner of his property permanently.

To constitute "theft" within the meaning of an automobile theft policy, there must be present the criminal intent to deprive the owner of his property permanently. Kovaro v. Hudson Ins. Co. of New York, 192 Minn. 10, 255 N.W. 93.

To constitute "theft" of an automobile within a theft policy, the taking must be without the owner's consent with the intention on the part of the taker to convert the automobile and deprive the owner of his property. McKensie v. Travelers' Fire Ins. Co. of Hartford, Conn., 239 Ky. 227, 39 S.W. 2d 239.

To constitute "theft" of an auto so as to render an insurer against "theft" liable, there must be a felonious intent to pemanently deprive the owner of possession. Seither v. Pennsylvania Mfrs.' Ass'n Casualty Ins. Co., 19 A. 53, 104 Pa. Super. 260.

"Theft" is the fraudulent taking of property with intent to deprive the owner of the value of it and with intent to appropriate the property to one's own use and benefit. Keller v. State, 76 Tex. Cr. R. 602, 176 S. W. 723.

In order to constitute a "theft" within the meaning of a policy insuring against the theft of an automobile, it is generally held that there must be present a criminal intent permanently to deprive the owner of his property. Hawkins v. Agricultural Ins. Co., R. I., 190 A. 858.

To constitute "theft" of personalty, in addition to taking and carrying away without owner's consent, there must be a felonious intent of the taker to convert the property to his own use and to permanently deprive the owner thereof. Boddie v. Home Ins. Co.,

La. App., 166 So. 178; Standard Chevrolet Co. v. Federal Hardware & Implement Mutuals, La. App., 178 So. 642.

Temporary taking of automobile by owner's employee for washing and simonizing, or his own wrongful use, with intent to return it to the owner held not to be "theft" within the meaning of a theft automobile insurance policy. Home Ins. Co. of New York v. Trammell, 230 Ala. 278, 160 So. 897.

The fact that in the case at bar Norton came into possession of the automobile lawfully and could not, therefore, be said to have committed larceny or theft in the taking of the car does not render it any the less necessary for plaintiff to show a criminal intent on the part of Norton to convert it to his own use permanently. This for the reason that regardless of whether we say he "stole" the car or "embezzled" it the criminal intent on his part to deprive the owner of it permanently must be shown to justify a recovery under the policy which insures against "theft."

Embezzlement is a statutory offense and the fundamental distinction between "embezzlement" and "larceny" is that in embezzlement the money or property is lawfully obtained and unlawfully converted whereas in larceny the taking must always be unlawful. State v. Cochran, 336 No. 649, 80 S.W. 2d 182. However, the criminal intent to deprive the owner of his property permanently must be shown, whether the act be called "embezzlement" or "larceny."

In Bankers Fire and Marine Ins. Co. v. Terry, Ala., 45 So. 2d 324, it was held that "larceny" is a technical term while "theft" is one of common usage and the two terms are synonymous in construing a policy insuring against loss or damage to an automobile caused by theft, larceny or pilferage. In said Terry case the court held that the unauthorized use of an automobile by an employee of a garage at which the automobile was left for repairs, in the absence of a showing of intent by the employee to convert the automobile to his own use or to deprive the owner of its possession, was neither a larceny nor theft of the automobile within the theft policy. In said case the judgment against the insurance company was reversed and the cause remanded.

In Home Ins. Co. v. Mathis, Ind., 32 N.E. 2d 108, it was held that in order to recover on an automobile theft policy for loss of or damage to the insured automobile taken by another than the insured without his consent, it must appear that the person taking it intended to steal it. In said case the judgment against the insurance company was reversed and the cause remanded.

In Laird v. Home Ins. Co. of New York, La. App., 177 So. 603, it was held that to constitute "theft" of personalty, in addition to taking and carrying away without the owner's consent, there must be a felonious intent of the taker to convert the property to his own

use and to permanently deprive the owner of his property. See also Dickerson v. Emmco Ins. Co., Ohio, 72 N. E. 2d 113, and La Motte v. Retail Hardware Mut. Fire Ins. Co. of Minnesota, Wis., 233 N. W. 566.

Coming now to our own state we find that in Bigus v. Pacific Coast Casualty Co., 145 Mo. App. 170, 129 S.W. 982, plaintiff therein brought suit to recover the amount of a policy of insurance insuring an automobile against "direct loss by burgulary, theft, or larceny." The trial court gave a peremptory instruction at the close of the case direcing a verdict for the defendant insurance company and plaintiff appealed. The evidence showed that the plaintiff's car, which was covered against theft by the insurance policy in question, disappeared from the barn where plaintiff kept it and on failing to find it plaintiff brought his suit against the defendant insurance company on the ground that the car had been the subject of "theft." Some time before the trial the car in question was found much damaged. The evidence also showed that one Mrs. Andrews (who had owned the car and for whom it was sold to plaintiff by Mrs. Andrews' husband under a power of attorney) had taken the car from plaintiff's storage place without the knowledge or permission or consent of the plaintiff. Mrs. Andrews had some difficulty with her husband and had seized the car under the advice of her attorney. The court said: "The insurance contract only covered a felonious asportation, and it is manifest that the taking shown was, at most, a trespass against which there was no insurance. The trial court properly directed a verdict for the defendant, and the judgment will be affirmed."

The Bigus case, supra, is the only case which we have been able to find among the decisions of our Missouri courts which can be said to be applicable to the problem we have before us in the case at bar. Although it is not precisely similar to the case at bar on the facts the principle applied therein is applicable to the case at bar.

The case of State v. Liston, 318 Mo. 1222, 2 S.W. 2d 780, is heavily relied on by plaintiff in the case at bar as authority for holding that there was a "theft" of the automobile involved herein. In the Liston case, supra, there was evidence showing that Liston was granted the use of the automobile in question for the purpose of driving it from Columbia, Missouri, to Fulton, Missouri, and back and not elsewhere for any other purpose than to obtain the speedy release on bond of the husband of one Josie Morris from custody; that in procuring the use of the automobile for the sole purpose mentioned, he was anxious to have "plenty of gasoline." The evidence showed that after getting possession of the automobile he did not take a single step toward arranging a conference with the Judge of the court in relation to the releasing of Josie Morris' husband from custody. He took no steps whatever to consult the Sheriff or Prosecuting Attorney of Columbia on the matter of the bail bond. When he got possession of the auto-

mobile, under the promises and representations thus made by him, instead of starting east to Fulton, he started west to Kansas City. After damaging the automobile and abandoning it at Boonville, he did not notify Josie Morris of the accident or damage to the automobile and did not return to Columbia until after he had been arrested in Kansas City a month later and was brought back by police officers. All the actions and conduct of Liston in that case constituted substantial evidence to show that he had a criminal intention to commit "theft of the car" when he took it into his possession. The court in that case, which was a state criminal prosecution and did not involve any insurance company or insurance policy, held that the law measured Liston's criminal intent by his acts and that it was not necessary for the state to plead or prove any specific intent on his part. The court said that a felonious and fraudulent intent could reasonably be inferred from the facts and circumstances developed by the state in making its case. The mere recital of the facts in the Liston case, supra, shows that it has no application whatsoever to the facts in the case at bar. There was clear evidence, in the Liston case, of a felonious and fraudulent intent to steal whereas in the case at bar all the evidence in the agreed statement negatives any such intention on the part of Norton.

In the case at bar plaintiff argues that many decisions cited by defendant herein dealing with the older forms of theft policies of insurance do not constitute authority for deciding cases involving modern comprehensive policies such as the one before us in this case. It is true that the interpretation of an insurance policy should be based upon the language of the particular policy involved.

However, the changing of the form of a policy which, notwithstanding the change in form, still insures against loss by "theft" cannot operate to change the plain, ordinary and commonly accepted meaning of that word.

Where, as here, the policy clearly insures against loss by "theft" that kind of loss must be proved before recovery can properly be allowed regardless of whether the policy be an older or a modern form. Plaintiff has not proved a loss by "theft" herein.

There is still another bit of evidence shown in the agreed statement of facts herein which although not controlling should be given consideration. It appears that plaintiff's officers reported the occurrence concerning the truck to the St. Louis Police Department. Norton was then arrested "on plaintiff's charge of theft" and after a conference the office of the St. Louis Circuit Attorney, the State's Prosecutor for felonies in said city, declined to issue a warrant against Norton.

The record does not show the ground or reason for the refusal to issue a warrant against Norton. It is, of course, barely possible that the Circuit Attorney decided that the venue for prosecution did not lie within his jurisdiction because the truck was found a considerable

distance beyond the limits of St. Louis and that he refused to prosecute on that ground. However, we do not believe that was the reason for refusing to prosecute or if that were the only reason, then we must presume that the Circuit Attorney would have performed his public duty and would unquestionably have seen to it that Norton was turned over to the proper prosecuting officials who had jurisdiction of the matter. He did not do that. He merely declined to prosecute.

The only reasonable inference, therefore, to be drawn from the refusal of the Circuit Attorney to charge Norton with theft of the truck under the facts agreed to is that he reached the same conclusion reached by the Circuit Judge and by this court in this cause, namely, that the facts did not and do not show any "theft" of the truck.

Plaintiff, having failed to sustain the burden that rested on it to prove a "theft" of the insured automobile, was entitled to recover only the sum of $180.10, which was the amount awarded by the Circuit Court for the items of damage and loss which were actually covered by the policy sued on.

We have never hesitated to resolve ambiguities in policies of insurance against insurance companies in accordance with the established rule as the records of this court will show. However, where, as here, there is no ambiguity in the policy and the facts affirmatively show that there was no coverage for the full loss claimed, we should be and are equally ready to hold against the claimant.

The judgment of the Circuit Court should be affirmed. It is so ordered. *Anderson, P. J.,* and *Bennick, J.,* concur.