STATE of Missouri, Respondent,

v.

Edward EDMONSON, Appellant.

No. 50037.

Supreme Court of Missouri,

Division No. 1.

Oct. 14, 1963.

Thomas F. Eagleton, Atty. Gen., Jefferson City, James P. Jouras, Sp. Asst. Atty. Gen., Kansas City, for respondent.

HOUSER, Commissioner.

Edward Edmonson, charged under § 560.-175, V.A.M.S., with driving, using and operating a motor vehicle without the permission of the owner thereof, and in the same information charged with four prior felony convictions, § 556.280, V.A.M.S., as amended Laws 1959, S.B. No. 117, § 1, was convicted of driving, etc., as charged. Punishment was assessed at a term of five years in the penitentiary, and judgment was rendered accordingly. Defendant appealed but filed no brief, so we examine the assignments of error in his motion for new trial. Supreme Court Rule 28.02, V.A.M.R.

Seven of the assignments of error relate to the alleged insufficiency of the evidence.

■ The state's evidence tended to show these facts: The owner of a 1963 Chevrolet, a "brand-new car," parked it in the 1400 block on Singleton Street in St. Louis, at about 7:15 a. m., locked the ignition, the doors and windows, and walked to his nearby place of employment. Shortly before noon two police officers observed defendant driving the Chevrolet, i. e., steering it, as it moved or rolled along the street, pushed by another car. The Chevrolet was not running under its own power; it was rolling along as it was pushed; the motor was not running. The car doing the pushing was a "quite old" Plymouth driven by a part-time employee of a service station. This looked peculiar to the police officers. Defendant "just didn't look right." The officers decided to check the automobile to see if it was a stolen car. The officers questioned defendant. When they began their inquiry the Chevrolet was at rest at the entrance of the service station. The right vent window was broken. The officers tried the key defendant had in the ignition but it would not operate the ignition, or work the locks on the trunk or the doors of the car. The officers noticed that there was a "jumper" under

the hood, an electric wire attached to the battery terminal and coil. A jumper enables a car to run without turning on the ignition by key. Defendant gave conflicting stories. First he said a Mr. Letner, eighth floor of the building on the southwest corner of 12th and Park, was the owner of the car; that Mr. Letner had directed defendant to take it to the service station to buy gasoline. The officer and defendant went to that building, but Mr. Letner's name did not appear on the building directory, and defendant admitted to the officer that Mr. Letner did not live there and that there was no need to go up to the eighth floor. Defendant was placed under arrest. After defendant was taken to the central district police station the officers checked the license plate, traced the name of the owner of the automobile, and received information that it was supposed to be parked in the 1400 block on Singleton. The owner, notified, came to the police station, identified the Chevrolet, and noticed that the vent window was damaged; that the right rear taillight was broken; that the license plate holder was bent, and that the speedometer showed that the car had been driven about 5 miles since it was parked that morning. The owner had not given defendant or any other person permission to operate the Chevrolet. In the owner's presence defendant admitted that he had driven and operated the car, and defendant then gave a different account of the manner in which he had come into possession of the car. His second story was that a friend named Ray had come by his house that morning driving the car; that defendant had presumed that it was stolen; that defendant had gone riding with Ray in the car; that Ray got out of the car and "gave" it to defendant, saying, "Here, you can have the car"; and that defendant was arrested shortly thereafter.

 We are of the opinion that this evidence, if believed, made a case of driving, using and operating a motor vehicle without the permission of the owner, under § 560.175, V.A.M.S. It was not necessary for the state to show that defendant knew the identity of the true owner of the vehicle, or knew that the person in possession of the automobile when defendant first came upon it was not the true owner, or knew that his activities in connection with the automobile were without the permission of the true owner, as claimed by the defendant. But defendant claims that the uncontradicted evidence shows that what he did was done "with the permission of a person reasonably thought by defendant to have been the true owner of the automobile." Without venturing an opinion on the question whether reasonable but mistaken understanding that the person giving permission to drive a motor vehicle was the owner would exonerate, the fact is that the state's evidence clearly shows that when "Ray" appeared with the Chevrolet the defendant "presumed" that the car was stolen. If the car was considered by defendant to have been stolen, Ray, who according to defendant gave him permission to drive it, reasonably could not have been considered the true owner. The evidence was sufficient to support the required finding of willfulness. "Willfully" as used in the verdict-directing instruction means intentionally and not accidentally. The evidence plainly shows that defendant's acts were done with the intention of driving, using and operating the motor vehicle without the permission of the owner, and does not demonstrate "accidental" driving. Defendant contends that guiding or steering an automobile along a public street while it is being pushed by another automobile does not constitute "driving, using and operating" within the meaning of § 560.175, V.A.M.S., but we hold to the contrary. It was not necessary for the motor to be running, the gears to be engaged or the vehicle to be running under its own power, as claimed. Any and all acts reasonably necessary to be performed in the movement of a motor vehicle from one place to another or fairly incidental to the ordinary course of its operation are encompassed within the meaning of the language "drive, operate, [or] use," as used in § 560.175, V.A.M.S. That defendant was driving, using and operating the vehicle was proved not

only by his act of steering and guiding under the described circumstances but also by his admission that he had driven and operated the car. There was no error in overruling defendant's motion for judgment of acquittal at the close of the state's case and at the close of all the evidence.

Defendant claims that the court should have dismissed the case and sustained his motion to suppress all evidence obtained by the state in connection with his arrest and detention, which is alleged to have been unlawful. The only bit of evidence claimed to have been improperly obtained was the admission of defendant at the police station within two hours after his arrest that he had driven and operated the automobile. The motion to suppress was based on two grounds: (1) that the officers under the circumstances surrounding this arrest "had no reasonable suspicion that any crime had been committed nor that defendant had committed any crime whatsoever," and (2) that defendant was detained incommunicado for more than four days following his arrest despite frequent requests to contact and telephone his family, friends and counsel; that defendant's family and friends frequently contacted the police department and were falsely informed that defendant was not in custody.

■ An arrest by police officers of the City of St. Louis, under the authority conferred by § 84.090, V.A.M.S., without a warrant, is lawful when the police officers have reasonable grounds to believe that an offense against the law has been committed by the person arrested. See State v. Brown, Mo.Sup., 291 S.W.2d 615; State v. Humphrey, 358 Mo. 904, 217 S.W.2d 551, 553; Hanser v. Bieber, 271 Mo. 326, 197 S.W. 68. The following facts observed by the officers constituted reasonable grounds to suspect that defendant had committed a felony: the broken window vent; the fact that the key in the ignition did not fit that car's ignition or other locks; the finding of a "jumper" on the ignition; the fact that defendant gave the officers conflicting statements and that his explanation of the manner in which he was given permission to drive the car was proved to be false. We rule that the arrest was lawful, and that defendant's admission was not rendered inadmissible by virtue of the arrest.

■ There is no merit in the second ground of the motion to suppress. Defendant's admission was made within two hours after defendant was taken into custody. There is nothing to show that the admission was not made voluntarily or that he was mistreated or overreached. Defendant himself admitted that he was not physically abused and that the statement was made *voluntarily*. The mere fact that it was made after defendant's arrest and while he was in custody and being examined does not render it inadmissible. State v. McKissic, Mo.Sup., 358 S.W.2d 1; State v. Wood, Mo.Sup., 266 S.W.2d 632.

■ In a prefatory instruction the court informed the jury that the state charges the defendant with the offense of driving, operating and using a motor vehicle without the permission of the owner; that the defendant pleads not guilty, thereby raising an issue of fact for the jury to determine; that the court has a duty to instruct the jury and that the jury has a duty to receive the instructions as the law and find defendant guilty or not guilty according to the law declared by the court and the evidence received under the directions of the court. Defendant complains that this misstated the charge, which was that of *"unlawfully, willfully* and *feloniously"* driving, operating and using, etc.; that the jury reasonably may have believed that a verdict of guilt could be returned without finding that such acts were done unlawfully, willfully and feloniously; that the instructions thus were conflicting and confusing. While it would have been more complete to preface the charge in the manner suggested we do not find reversible error in the failure of the court to do so. In determining whether an individual instruction is misleading and prejudicial all of the given

instructions must be read and considered together and if they properly present the law of the case when thus considered that is all that is necessary. State v. Brown, Mo.Sup., 332 S.W.2d 904, 910. We hold that all of the instructions, read and considered together, properly presented the law of the case and that defendant was not prejudiced by the omission noted.

■ Defendant claims error in refusing to permit defendant to testify that he was married and had four children, aged 1, 6, 7 and 11 years, and that his wife was in the courtroom. In order to be admissible evidence must be relevant to the issues to be determined, and if offered on matters which have no bearing upon the matters in issue it should be excluded. State v. Knight, 356 Mo. 1233, 206 S.W.2d 330, 333. Evidence offered solely for the purpose of creating sympathy for defendant is properly excluded. State v. Butler, Mo.App., 309 S.W.2d 155. The fact that defendant was married and had children, the number and ages of the children, and whether defendant's wife was in the courtroom, were altogether immaterial facts, Golian v. Stanley, Mo.Sup., 334 S.W.2d 88, 1. c. 91, and cases cited, which had no bearing upon the question whether defendant was guilty of driving, etc. without the necessary permission. The only purpose of offering such evidence would be to engender sympathy for the defendant. For the same reasons that it has been held improper to inquire of a plaintiff in a civil suit as to the number of children there are in his family, Golian v. Stanley, supra, and see Donze v. Swofford, Mo.App., 368 S.W.2d 917, and cases cited 1. c. 921 [1], we hold that there was no error in excluding such irrelevant and immaterial evidence as to the family status of the defendant in this criminal case.

■ Error is assigned "in allowing defendant to be taken from the courtroom under armed guard at every recess in the case, within plain view of the jury, over defendant's objection, in that such action was unduly inflammatory and dramatic and prejudicial to defendant." Assuming the truth of this assignment, there is nothing in the record which indicates that under the circumstances the court exceeded its right to take the reasonably necessary precautions for the maintenance of order and retention of custody of an accused during the progress of the trial. State v. Johnstone, Mo.Sup., 335 S.W.2d 199, 1. c. 205 [10], and authorities referred to.

■ Finally, defendant complains that he was removed and was absent from the courtroom several times while the jury was seated in the jury box, and therefore was deprived of his right to be present at all times during his trial. He says this happened three times: when the recess was declared for the preparation of instructions; when the court called for order at the end of that recess, and again following the closing arguments. When the objection was first raised the court inquired of defendant's counsel what proceedings occurred while defendant was not in the courtroom, but counsel was "not prepared to state specifically." The judge stated his recollection that defendant was removed after a recess had been declared by the court and announced by the sheriff and that immediately after defendant was removed the next thing that occurred was that the jury was escorted out of the courtroom. It was stipulated that the interval of absence on this occasion was 20 seconds. The second objection came at the conclusion of the arguments. It was then objected that the defendant was taken out of the courtroom after the court declared but before the sheriff announced the recess. On this occasion there was a 30-second interval of absence, during which the jury remained in the jury box.

■ The defendant has a right to be present at all times during the entire proceedings but defendant was not denied that right, as a practical matter, under these facts. Defendant's counsel was unable to specify any proceedings which defendant missed during the first interval, and in overruling the motion in the second in-

stance the court observed that nothing transpired in the interval between the time the defendant and the jury were escorted from the courtroom. We conclude that nothing whatever in the way of court proceedings occurred in the courtroom on either occasion. There is an entire absence of any showing of prejudice to the rights of the defendant. Defendant's contention, on this record, is so highly refined and overtechnical as to be entirely devoid of merit.

An examination of the record as required by Supreme Court Rule 28.02, V.A. M.R., discloses no error.

The judgment is affirmed.

COIL and WELBORN, CC., concur.

PER CURIAM.

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.