STATE of Missouri, Respondent,

v.

Robert Jerome McLARTY, Appellant.

No. 52180.

Supreme Court of Missouri,
Division No. 1.

April 10, 1967.

Norman H. Anderson, Atty. Gen., Jefferson City, Stanley P. Clay, Special Ass't. Atty. Gen., Joplin, for respondent.

Philip A. Maxeiner, Michael N. Newmark, and Lawrence Alan Waldman, St. Louis, for appellant.

HENLEY, Judge.

Defendant and one Kenny Wade Roberts were charged by information with tampering with a motor vehicle, a felony. Section 560.175, RSMo 1959, V.A.M.S. McLarty was tried separately from his co-defendant; a jury found him guilty and assessed his punishment at imprisonment for one year. He was sentenced in accordance with the verdict to serve his imprisonment in the Workhouse of the City of St. Louis and given credit on the sentence for five months and ten days spent in jail prior to trial. He appeals from the judgment. He was represented by able counsel at the trial and in this court. The case comes to the author on reassignment.

Counsel for defendant brief two points: (1) that the state failed to make a submissible case; and, (2) that the court erred in the admission of evidence secured as a result of an unlawful arrest.

The motor vehicle involved, property of Abe Jones, was a 1962 model blue Chevrolet equipped with a portable type air conditioner hung under and attached to the dash by two metal hangers; two rubber hose ran from the air conditioner through the floorboard. Jones testified that en route home from his employment on October 4, 1965, he stopped at a gasoline service station at about 6:00 P.M., to use the toilet; that as he left the toilet he saw a strange woman drive his automobile out of the service station driveway, without his permission; that he and others called to the driver to stop, to no avail; that he called the police and reported the theft; that the automobile bore license plate number SN3–735. He further testified that he next saw his automobile after it was recovered by the police; that the left side of the air conditioner had been loosened and dropped down from the dash, the hose cut and pulled through the floor.

Patrolman Paul Sellers, a member of the St. Louis Metropolitan Police Department, testified that on the night of October 6, 1965, he and Patrolman Gary Barna were cruising their assigned area in a police car; that at about 11:05 P.M., they observed a blue 1962 Chevrolet, with its domelight on and two men in it, parked alone on an unlighted parking lot behind an apartment building at 1208 Hamilton in the City of St. Louis; that they got out of their cruiser and walked up to the Chevrolet, Sellers going to the driver's side and Barna to the right side; that they found defendant on the passenger side, bent over, holding a flashlight directed on the air conditioner and Roberts on the driver's side stretched over to his right " * * * doing something with a screw on the air conditioner * * *;" that the left side of the air conditioner was disconnected from the dash, resting on the floorboard with the hose cut loose.

Patrolman Barna's testimony was essentially the same as that of Sellers. He further testified that he knocked on the car window and Roberts opened the left door; that he asked Roberts what he was doing and he replied that he was repairing the air conditioner, that it " * * * had slipped down off the brace and he was trying to put it back * * *;" that he walked to the rear of the Chevrolet, got its license number and asked Sellers to use the cruiser's police radio to check that number for possible theft. At this point no arrest had been made.

Patrolman Sellers further testified that he checked license number SN3–735 by radio; then he and Barna walked back to the Chevrolet and immediately arrested defendant and Roberts for tampering with a stolen automobile. He further testified that when they got back to the Chevrolet to make the arrest " * * * they [defendant and Roberts] were both trying too [sic] get the

air conditioner outside the automobile * * *;" that defendant " * * * had his head down beneath the dashboard, close to the air conditioner, which was in the middle of the dashboard."

Photographs of the inside of the Chevrolet taken at Police Headquarters in the presence of Patrolman Barna were admitted in evidence over objection of defendant. Both officers testified that these photographs show the interior of the automobile and the position of the air conditioner exactly as they saw it from outside immediately before and at the time of the arrest.

Defendant did not testify. His only witness was Roberts, who admitted that he had entered a plea of guilty to the charge of tampering with Jones' automobile, and had been convicted of three prior felonies. Roberts testified that on the night of October 6, he borrowed the automobile from Gwendolyn, " * * * a young lady that I was very familiar with * * * a young lady that lived—well, she lived next door to me; the two of us had been pretty close for some time * * *;" that he was " * * * not positive of her last name * * *;" that he thought she was now in the penitentiary; that he lived in a four-family flat at 4229 Delmar and his mother also lived there; that defendant worked for his mother and " * * * at times he stayed there also, you know, when he was working * * *," but defendant's " * * * permanent address at the time * * *" was on Clara; that he and defendant walked from the flat to a nearby corner tavern and on their return his girl friend was there; that he " * * * borrowed the car to make a run myself * * *" to an apartment building at 1208 Hamilton and, at defendant's request, to take him " * * * out to his house * * *;" that when he got in the automobile he noticed the air conditioner " * * * was kind of loppy; in other words, hanging somewhat * * * on an angle * * * hit a little bump * * * it would shake and rattle * * *;" that he drove to 1208 Hamilton, stopped and

got out for about ten or fifteen minutes; that defendant remained in the car, waiting for him; that the police " * * * arrived almost immediately * * * after his return to the automobile;" that when the police first arrived defendant " * * * was steadying * * *" the air conditioner, " * * * leveling it up for me to tighten * * * one of the bolts * * *."

Defendant's point that the state failed to make a submissible case is confined solely to a contention that the state failed to prove one essential of the crime charged, that is, *criminal intent* to tamper with Jones' automobile without permission of the owner. He does not contend the state failed to prove (1) that he tampered with the automobile, or, (2) that such tampering was without the permission of the owner; his contention *is*: no proof of criminal intent to tamper without permission. His contention is based on this argument: "There was no evidence that defendant knew Roberts was either not the owner or that Roberts did not have the permission of the owner. There was no evidence that defendant knew who the owner was, or that defendant knew he was in the automobile without the permission of the owner. In short, there was no evidence on which a jury could even infer that defendant, knowingly, did not have the permission of the owner."

The state contends that it was not essential that it prove defendant's criminal intent. During oral argument in this court, in response to an inquiry from the Bench as to whether it was the state's position that there was sufficient evidence to show criminal intent should the court hold criminal intent a necessary ingredient of the offense, counsel for the state asserted: " * * * I don't think it is necessary, and offhand, I would say that we didn't prove criminal intent. We didn't have to, we didn't try to, it wasn't necessary." We do not agree with the state's contention or the "offhand" reply of its counsel.

"It has been held that, as a general rule, a statute defining a crime is to be construed in the light of the common law and the existence of a criminal intent is to be regarded as essential, even when not in terms required, and that before a statute will be construed so as to eliminate guilty knowledge or intent as an element of an offense, the legislative intent to do so must be clearly apparent." 22 C.J.S. Criminal Law § 30, p. 104. Also see: State v. Hefflin, 338 Mo. 236, 89 S.W.2d 938, 946 [13], 103 A.L.R. 1301. "It has been held, however, that * * * criminal intent is not an element of the offense where the commission * * * of an act is made a crime without any express reference to intent, and that guilty knowledge * * * is not a necessary element of a crime unless made so by the statute defining the crime * * *," 22 C.J.S. Criminal Law § 30, p. 104, but, "Whether or not criminal intent or knowledge is an element of a statutory crime depends on the intent of the legislature, and is a matter of statutory construction, * * *" and "The omission in the statute defining the crime of the word 'knowingly' is not conclusive on whether or not guilty knowledge is an essential element of the crime." 22 C.J.S. Criminal Law § 30, pp. 103, 104.

While the question of whether criminal intent is an essential element of the crime of tampering with a motor vehicle has not been directly ruled by this court, since the amendment in 1917 (Laws 1917, p. 411) of Section 8514, RSMo 1909 (now Section 560.175) adding the words "tampering with," the court has assumed, and said by way of dictum, that criminal intent is an essential element of the offenses proscribed by subsection 1 of Section 560.175. State v. Wahlers, Mo., 56 S.W.2d 26, 27 [3]; State v. Ridinger, 364 Mo. 684, 266 S.W.2d 626, 630, 42 A.L.R.2d 617; State v. Edmonson, Mo., 371 S.W.2d 273, 275 [2]. We now so hold. In Wahlers (56 S.W.2d l.c. 27), after determining that the evidence was sufficient to sustain conviction, the court said: "Whether or not defendant sufficiently explained his possession of the car *so as to exonerate him from criminal intent* was a question for the jury." (Emphasis added.) In Ridinger (266 S.W.2d l.c. 630), while discussing the history and legislative purpose and intent of Section 560.175, the court said: "The legislature has clearly indicated that it is the public policy of this State to prohibit and make statutory offenses all such acts of others done with *unlawful intent* which tends to interfere with the rights of the owners of motor vehicles * * *." (Emphasis added.) In Edmonson (371 S.W.2d l.c. 275), the court said: "The evidence was sufficient to support the *required finding* of willfulness. 'Willfully' as used in the verdict-directing instruction means intentionally and not accidentally." (Emphasis added.)

We note in passing that while the burden of proof of intent is, of course, on the state, Roberts, defendant's guilty companion and only witness, did not exonerate him, or attempt to do so, although he had full opportunity. He did not testify that defendant "knew" or "thought" Gwendolyn was the owner of the automobile. Even if it be assumed the defendant "believed" Gwendolyn was the owner, Roberts' testimony would not be contrary to a criminal intent to unlawfully tamper with *her* automobile by removing its air conditioner.

Defendant relies heavily on State v. Castaldi, Mo., 386 S.W.2d 392, in support of his contention that the evidence was insufficient to support his conviction. In Castaldi there was no evidence of an act or deed or circumstance that the defendant tampered with the automobile or otherwise participated in the crime; the evidence showed merely his presence at the scene; no more. Castaldi is not applicable. In the instant case the evidence is that defendant tampered with the stolen automobile, that he participated in the crime. Here, we have the defendant accompanying a man, a

 felon, in the middle of the night to an unoccupied parking lot behind an apartment building helping to remove and "trying to get the air conditioner outside the automobile." The jury was not required to, and did not, believe that defendant and his companion were trying to "tighten one of the bolts" to secure the air conditioner to the dash. From this evidence the jury reasonably could find that defendant willfully, unlawfully and feloniously tampered with the automobile without the permission of its owner; the evidence, and reasonable inferences to be drawn therefrom, support the conviction.

 The photographs in evidence depict, and the testimony of the officers relates, what they saw inside the automobile with their own eyes while standing outside immediately before and at the time of the arrest. When the arrest was made the officers had information that this was a stolen automobile, and defendant and his companion were in the act of removing its air conditioner under very suspicious circumstances. The officers had reasonable cause to believe defendant was in the act of committing a felony; the arrest was lawful. The court did not err in admitting in evidence their testimony or the photographs. State v. Byrth, Mo., 395 S.W.2d 133, 136 [6]; State v. Hawkins, 362 Mo. 152, 240 S.W.2d 688, 692 [5].

Examination of the record as required by Criminal Rule 28.02, V.A.M.R., discloses no error.

The judgment is affirmed.

HOLMAN, P. J., concurs.

SEILER, J., concurs in result in concurring opinion filed.

SEILER, Judge (concurring).

As the majority opinion states, in prior car tampering cases the precise question whether criminal intent is required has not been before the Court. The statute provides, "No person shall drive, operate, use or tamper with a motor vehicle or trailer without the permission of the owner thereof." It is thus made wrong by legislation to do so. It does not seem to me there is any requirement the acts prohibited must be done with specific criminal intent, or that the defendant know he does not have the owner's permission, State v. Edmonson (Mo. Sup.) 371 S.W.2d 273, 275; Eiswirth Const. & Equipment Co. v. Glenn Falls Ins. Co., 241 Mo.App. 713, 240 S.W.2d 973, 979; State v. Edmonson (Mo.Sup.) 309 S.W.2d 616, 618; Zuber v. Clarkson Construction Co. (Mo.Sup.) 315 S.W.2d 727; State v. Ryan (Mo.App.) 289 S.W. 13 (in the last cited case all the state showed was that the policeman apprehended defendant in the act of getting out of the prosecuting witness' automobile). It seems to me the statute is a valid exercise of the police power in the regulation of motor vehicles, of the type not depending on any guilty or criminal intent, but consisting only of the intentional as opposed to the involuntary or accidental doing of the forbidden acts, 22 C.J.S. Criminal Law § 30, p. 105; 21 Am.Jur.2d Criminal Law, Sec. 89, p. 169, and Sec. 90, p. 170; Haggerty v. St. Louis Ice Mfg. & Storage Co., 143 Mo. 238, 44 S.W. 1114, 40 L.R.A. 151; State v. Ridinger, 364 Mo. 684, 266 S.W.2d 626, 630; Morissette v. United States, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288; 11 A.L.R. 1434.

As I believe was conceded by the state in oral argument, it is doubtful that the state proved criminal intent here. However, since I do not believe it was necessary to prove criminal intent and since the evidence shows defendant was participating in tampering with the vehicle without the permission of the owner, it appears to me he is guilty of violation of the statute, and I therefore concur in the result reached in the majority opinion.