SEKAT, Plaintiff in error, vs. THE STATE, Defendant in error.

*March 8—April 2, 1935.*

For the plaintiff in error there was a brief by *G. K. Gulbankian* of Racine, attorney, and *Samuel D. Berg* of Milwaukee of counsel, and oral argument by *Mr. Gulbankian*.

For the defendant in error there was a brief by *John R. Brown,* district attorney of Racine county, *O. M. Edwards,* assistant district attorney, the *Attorney General,* and *J. E. Messerschmidt,* assistant attorney general, and oral argument by *Mr. Brown* and *Mr. Messerschmidt.*

MARTIN, J.  On July 6, 1934, a strike was in progress at the plant of the Horlick Malted Milk Corporation in the city of Racine.  On said day the office help, such as department heads, stenographers, clerks, bookkeepers, etc., had not joined the strikers, and for several days prior to July 6th had come to the plant in a caravan of automobiles.  In the forenoon of July 6, 1934, at about 8:30, there was a crowd of approximately two hundred fifty people picketing the gate leading into the Horlick plant.  The defendant was present among the picketing workers taking part in the activities.  At about 8:45 a. m. a caravan of about ten cars containing the members of the office force approached the gate leading into the plant from the south.

It appears that, as the caravan of cars approached, defendant went out toward the concrete highway and shouted to a crowd on picket duty and who were on the opposite side of the street, urging them to come across and help stop the cars from passing through the gate into the plant.  It further appears that as the cars approached the gate the crowd started to shout and push the cars.  As the cars moved slowly from the main highway to the gateway, the crowd, in spite of the efforts of the police officers, closed in upon them, yelling, cursing, pushing on the cars, ripping a side curtain off one car and endeavoring to overturn others, and smashing the glass in six of the cars, injuring a number of the occupants.

The Killian car, a Buick sedan, was the fourth car in line in the caravan.  It contained five members of the office force. As Mr. Killian entered the gateway leading into the plant, the crowd was milling around, yelling and shouting, jostling

and gesticulating, and endeavoring to stop the cars from moving forward. As he was about to enter the plant, the windows of his car on the right side were smashed and the occupants were injured by the flying glass. Immediately afterward a stone was found in the Killian car. The defendant was identified as one of those taking part in the melee.

Officer Henks, who was on duty and at the point of trouble, testified that defendant was standing on the south side of the gate on the right side of the automobiles going in; that defendant made a "pass" at one car and missed it; that he then threw an object at the next car following, and this object pierced the right front glass of that car. Officer Henks thereupon grabbed defendant. The officer was only about two feet away when defendant threw the object through the window of the car. The officer describes the crowd as "milling around." Some were trying to stop the automobile from going through; some pushed on the front bumper and the headlights, but the car was moving slowly at the time. He heard glass breaking in the other cars; that glass was broken in six automobiles and the side curtains were torn off one of the cars. He testified that he seized the defendant immediately. Officer Lucassen testified that he was several feet away from the defendant, saw defendant striking at the car; and that he saw him hurl an object through the window of the fourth car in line. When Officer Henks seized the defendant and endeavored to take him out of the crowd, other members of the crowd pulled the defendant away from the officer.

After the caravan had gone through the gates, the rioting ceased and about one and a half hours later defendant was placed under arrest.

The statute, sec. 343.431, for the violation of which defendant was prosecuted and convicted, provides:

"Any person who shall, individually or in association with one or more others, wilfully break, injure, tamper with, or

remove any part or parts of any electric, horse, or other railway car, coach, or locomotive, or any automobile, or other similar motor vehicle, or any other portable vehicle or traction engine, or any part or parts of any stationary engine, machine, implement, or machinery for the purpose of injuring, defacing, or destroying such locomotive, engine, car, coach, automobile, or other vehicle, implement, or machinery, or of preventing the useful operation thereof or any other purpose, or who shall in any other way wilfully or maliciously interfere with or prevent the running or operation of any locomotive, engine, automobile, or other vehicle, or machinery shall be punished as provided in subsection (1) of sec. 343.43." [By imprisonment in the state prison not more than three years nor less than one year, or in the county jail not more than one year, or by fine not exceeding one thousand dollars.]

Sec. 347.02, Stats., relating to unlawful assembly and riot, provides:

"Any three or more persons who shall assemble in a violent or tumultuous manner to do an unlawful act or, being together, shall make any attempt or motion toward doing a lawful or unlawful act in a violent, unlawful or tumultuous manner, to the terror or disturbance of others, shall be deemed an unlawful assembly; and if they commit such acts in the manner and with the effect aforesaid they shall be deemed guilty of a riot and shall be punished in either case by imprisonment in the county jail not more than one year or by fine not exceeding five hundred dollars."

The defendant contends that the court erred in denying his motion to set aside the verdict of the jury and for a new trial. It is conceded that, if the verdict is sustained by credible evidence, it must not be disturbed on appeal. The defendant's principal contention is that on the newly-discovered evidence the court should have granted a new trial.

This newly-discovered evidence was presented in the form of an affidavit by one Julius Kapudja, from which it appears that the affiant was an employee of the Horlick Malted Milk

Company, and that on the morning of July 6th, he was on picket duty at the Horlick plant. The affidavit continues:

"That about 8:45 a. m. the scab cars came along. The third car or the fourth car on the line was Charles Killian's car. I and two others whom I do not know lined on the right side of the car. I hit the right front window of Killian's car with my fist and broke the glass. My hand was badly hurt from the blow. I went to Dr. Marek for treatment. He put six stitches. I knew who John Sekat was, and he was not around when I hit the glass of Killian's car. I knew who Killian was very well, as I worked for the same company so long. It was Killian's car that I hit. It was its right front window. We intended to tell the scabs not to work."

The trial court has carefully considered the defendant's application for a new trial, having in mind this alleged newly-discovered evidence as well as the other grounds urged by defendant for a new trial. It appears from the affidavit of Mr. Kapudja that he struck the right front window of Mr. Killian's car with his fist, broke the glass and injured his hand. He makes no claim that he threw a stone through any of the windows of the Killian car. It appears to be definitely established by the testimony of several witnesses that the defendant did throw some object through the window of the Killian car. Several of the occupants of the car were injured by flying glass, and immediately afterward a stone was found in the car.

Under all the circumstances, this so-called newly-discovered evidence has but little weight. We have carefully examined all of the evidence and hold that it is sufficient to sustain defendant's conviction on both counts of the information.

*By the Court.*—Judgment affirmed.