## DAYTON (city) v DeBROSSE

Ohio Appeals, 2nd Dist, Montgomery Co

No 1528. Decided Feb. 2, 1939

Paul H. Blum, Dayton, for defendant-appellant.

Ernest W. Kruse, Dayton, for plaintiff-appellee.

## OPINION

By HORNBECK, J.

This is an appeal on questions of law from a judgment of the Municipal Court of the City of Dayton of conviction and sentence of defendant on a charge of unlawfully operating a motor vehicle, to-wit:

"A trolley bus on Forest Avenue, a public thoroughfare, in the City of Dayton, without due regard for the safety and rights of pedestrians and drivers and occupants of all other vehicles, and so as to endanger the life, limb or property of persons in the lawful use of the said public thoroughfare; in this; to-wit: driving northwardly on said Forest Ave. and in making a left hand turn into Neal Ave., the said defendant. struck a Ford Truck which was proceeding southwardly on Forest Ave. at Neal Ave., said Ford Truck being driven by Robert Pester, contrary to the form of the ordinances of said city in such cases made and provided."

There are two assignments of error. First, error in the overruling of defendant's motion to quash the affidavit and warrant issued thereon; Second, other errors manifest from the face of the record.

The briefs of the parties are directed to one proposition only, namely, was the vehicle, which the defendant was driving at the time of the collision between it and the automobile driven by the prosecuting witness, a "motor vehicle" within the meaning of the language of the Section of the ordinance, which it is charged the defendant violated.

We get considerable light in the briefs of counsel on the ultimate questions determined by the trial judge but we grope in considerable darkness if we depend upon the transcript of the testimony for information on the proposition which we are requested to decide. We recognize that it is of considerable moment both to the plaintiff, the defendant, and the Company for which he works, that it be determined whether or not the ordinance invoked in this case has application to the vehicle driven by the defendant.

The motion to quash the affidavit because it did not state an offense should have been sustained for reasons hereinafter stated.

It was incumbent upon the plaintiff to establish that the ve- hicle, which defendant was driving at the time of the occurrence set forth in the affidavit, was a motor vehicle as contemplated in the ordinance.

The record, made up on behalf of the City of Dayton upon the controverted issue consists of the testimony of Robert Pester, the driver of the automobile truck with which the vehicle, driven by the defendant, came in contact, and Officer E. J. Gottschall, who came to the scene after the accident.

Pester, describing the vehicle with which he collided, speaks of it in his examination in chief as a "bus" without other or further characterization. On cross examination every reference to the vehicle being driven by the defendant was made by the term "trolley". Considerable of the record is given to the proof of the kind of truck that prosecuting witness was driving, how fast it would go in second gear, who made it, limitations in its speed, etc., but upon the question in which we are interested there re just two expressions. It is called a "bus" in chief and a "trolley" on cross examination. Officer Gottschall speaks of the vehicle under consideration as a "trolley bus" both in chief and on cross examination.

We next examine the record to find the ordinance under which the case was prosecuted, the ordinance defining the term "motor vehicle" and if to be found, a definition of "trolley bus". But the record is entirely silent on these material matters.

It had long been the law of Ohio that a reviewing court is not required to take judicial notice of a Municipal ordinance, Nelson v Village of Berea, 21 C. C. 781; Esch v City of Elyria, 7 C. C. (N.S.) 9; Gates v City of Cleveland, 18 C. C. (N.S.) 349; Evans v Wooster, 28 O. C. A. 285, and there was but one case holding to the contrary, Strauss v Village of Conneaut, 3 C. C. (N.S.) 445. However, recently in Orose v Hodge Drive It Yourself Company, Inc., 132 Oh St 607, the Supreme Court has announced a distinctly new and different doctrine which is found in the second syllabus:

"In reviewing the judgment of a Municipal Court on questions of law including the weight and sufficiency of the evidence, the reviewing court will take judicial notice of an ordinance of the municipality to the same extent as the Municipal Court did and had a right to take notice thereof."

In the cited case it was only necessary for the reviewing court to take judicial notice of the ordinance upon which the plaintiff's cause of action was grounded. The syllabus which we have quoted and the reasoning in the opinion would require that we take judicial notice of each and every ordinance which has any relation or pertinency to the legal questions presented in this prosecution. This is true because the opinion says a reviewing court is presumed to know the law. So knowing the law the court must take judicial notice of each and every ordinance involved in any case which may come before it. This may be sound theoretically but in practice it puts a most onerous burden on a reviewing court. This burden is illustrated in the instant case. Here not only are we required to take judicial notice of the or- dinance under which the prosecution was instituted but likewise of every ordinance of the City of Dayton which has any application to the question involved, namely, whether or not the vehicle which defendant's agent was driving was a "motor vehicle". In this case the only manner in which these ordinances are brought to our attention is by the briefs of counsel unless we on our own motion examine the city records in which the ordinances are kept.

The city bases its prosecution upon the proposition that the defendant was driving a motor vehicle, and this the defendant denies, yet neither offers testimony describing the vehicle. There is no showing of the mechanism of the bus, whether or not it was operated by motors, moved on a fixed route or was rubber tired, nothing which would inform this Court whether or not it was a motor vehicle as mentioned in the ordinance except that it was a trolley bus. It is obvious that this proof should have been forthcoming and would be helpful to a reviewing court.

Of course, it is evident what has occurred in this case. Counsel and the trial judge were familiar with the intersection where the accident occurred, knew what kind of vehicles the Company for which defendant was working operated at this intersection, knew how they were propelled and knew whether or not they ran on a fixed track, knew all ordinances germane to the question involved and little attention was given to a record for a reviewing court.

According to the briefs the section claimed to be violated is 307 of the Traffic Code of the City of Dayton as follows:

"Whoever operates a motor vehicle upon the streets, alleys, boulevards or other public ways or places in the City of Dayton, Ohio, without due regard for the safety and right of pedestrians and drivers and occupants of all other vehicles, and so as to endanger the life, limb or property of any person or persons while in the lawful use of the streets, alleys, boulevards or other public ways or places of said City, shall be deemed guilty of a misdemeanor and upon conviction thereof shall be punished as provided in Section 305 of the Code of General Ordinances of said City."

When we take judicial notice of certain ordinances of the City of Dayton appearing in the brief of counsel for the defendant we find no mention of the term "trolley bus". The only term which has any similarity whatever is a definition in ordinance 14703 of an "electric trolley car" which is found in that section.

" 'Electric Trolley Car' is hereby defined to be a vehicle for transporting passengers, which is equipped with air-pressure rubber tires (or modern substitutes for same), confined in its operation to a fixed route or trolley track by reason of its not being self-propelled off of said trolley track and propelled by electric street railway motors functioning by electric current collected from a central power plant, or station, through two overhead wires and two trolleys."

If at any place in the record any witness had spoken of the vehicle which defendant was driving as an "electric trolley car" we could give application to the ordinance which we have heretofore quoted.

Section 280 of the Traffic Code which we find in a brief and Section 253 both speak of 'trackless trolleys' and Section 253 says that,

"All parts of streets upon which street cars or electric trolley cars, sometimes referred to as 'trackless trolleys', operate, together with the streets hereinafter enumerated in this paragraph of this section, are hereby declared to be 'preferential main thoroughfares'***."

This indicates that a "trackless trolley" and the "electric trolley car" defined in ordinance 14703 heretofore quoted are synonymous, but there is no mention made in the record of a "trackless trolley". We do not feel justified in noting judicially that a trolley bus is synonymous with "trackless trolley" or an "electric trolley car", though that may be true.

It was incumbent upon the city to prove every material element of the offense charged, among which was that the vehicle which defendant's agent was driving was a "motor vehicle". Un-

der the statutes a motor vehicle is variously defined. In §614-103, GC. For purposes of regulation as carriers.

"The term 'motor vehicle' shall include any automobile, automobile trucks, motor bus or any other self-propelled vehicle not operated or driven upon fixed rails or tracks and shall include trailers."

In §6290, GC. For Police Regulation purposes.

" 'Motor vehicle' means any vehicle propelled or drawn by power other than muscular power, or power collected from overhead trolley wires. except road rollers, traction engines, power shovel and power cranes used in construction work not designed for or employed in general highway transportation. well-drilling machinery, ditch digging machinery and farm machinery."

In §12565, GC. For regulation of the sale of gasoline.

" 'Motor vehicle' shall mean and include all vehicles, engines, machines or mechanical contrivances which are propelled by internal combustion, motors or engines."

The City of Dayton in the ordinance upon which the prosecution is based, 307 of the Traffic Code. has adopted verbatim the language of §12603-1, GC.

"A statute adopted from another state or from another country will be presumed to have been adopted with the construction placed upon it by the courts of that state or country before its adoption. * * * The rule is also applied by the federal courts in construing a state statute adopted from another state." 59 C. J. 1065.

By analogy the rule may be applied in this case. The City of Dayton having adopted the language of §12603-1, GC, in the absence of a showing to the contrary, it will be assumed that the term

"motor vehicle" as carried into the ordinance is synonymous with its meaning as found in the section of the Code.

Sec. 6290; GC, in defining "motor vehicle" was originally Section 1 of an act, 99 O. L. 108 (1908), §14 of which was carried into the Code as §12603, the terminology of which was in the main the same as now is found in §12603-1, GC. It is clear then that the definition of "motor vehicle" as found in §6290, GC, controls its meaning in the Penal Code of which §12603-1, GC is a part. By "motor vehicle" as set forth in §12603-1, GC, is meant a "motor vehicle" as defined in §6290, GC, which excepts any vehicle "propelled by power collected from overhead trolley wires". This would exclude a "trolley bus" from the classification of a "motor vehicle".

There is a definition of "vehicle" in the ordinances of the city of Dayton as follows:

Section 233(a): "The word 'vehicle' as used in this ordinance shall include any contrivance used or capable of being used as a conveyance or means of transportation on land, excepting baby carriages and street cars."

This is the broadest definition of the word "vehicle" that we have found anywhere.

It may be noted that §1 of 6290 GC defining "vehicle" also excepts "vehicles operated from overhead electric trolley wires" which would conflict with the definition of "vehicle" as found in the ordinances of the City of Dayton. But there is nothing inconsistent with the interpretation that a "vehicle" as defined in the ordinance is not a "motor vehicle" if propelled by power collected from overhead trolleys.

Inasmuch as the Commission of the City of Dayton deemed it advisable to define "vehicle" but failed to do so as to "motor vehicle", it is probable that it intended the general meaning of the term to control as found in the Police Regulations sections of the Code.

It has long since been recognized as

the public policy of the state not to classify street cars as motor vehicles. As to the new types of trolley vehicles taking the place of street cars they likewise are not now so classified.

We are cited by counsel for the appellant to the Memphis Street Railway Co. v Crenshaw, an opinion of the Supreme Court of Tennessee, (156 Tenn.) 55 S. W. (2nd) 758, wherein it is held that a taxation act providing for registration of automobiles would not include in the term "automobiles" trolley vehicles or trolley busses. This is an interesting opinion and seems to be the only one available which considers the classification "trolley bus" as relates to automobiles.

It will be observed, however, that the Section under construction in the cited case defined the vehicles under construction as "automobiles". The term "motor vehicle" is different and broader than the word "automobile" and it can readily be seen that a vehicle might be classified as a motor vehicle and not as an automobile and that an automobile is essentially a self-propelled vehicle.

There is similarity in the Tennessee case and the instant case in that a strict construction of the ordinance was required to be made because it was a taxation measure and here likewise strict construction must be given to the ordinance because it creates a quasi criminal offense and imposes a penalty. **Schultz v Cambridge, 38 Oh St 658. State ex Schorr v Viner, 119 Oh St 303.**

It is our opinion that upon the meager record presented the proof did not establish that the defendant at the time fixed in the affidavit was operating a motor vehicle and therefore he should not have been convicted of the offense alleged. Inasmuch as a "trolley bus" is not a "motor vehicle" the motion to quash should also have been sustained.

The judgment will be reversed and remanded.

BARNES, PJ, & GEIGER, J, concur.