**STATE v. WOOD.**

No. 43581.

Supreme Court of Missouri.

Division No. 1.

March 8, 1954.

Rehearing Denied April 12, 1954.

**634**

Charles Powell, Jr., Macon, for appellant.

John M. Dalton, Atty. Gen., Aubrey R. Hammett, Jr., Asst. Atty. Gen., for respondent.

CONKLING, Chief Justice.

Vernon John Wood, herein called defendant, appealed from a judgment of the circuit court of Macon County, wherein upon a charge of tampering with a motor vehicle, upon the verdict of a jury, he was sentenced to a term of six months in the County Jail and assessed a fine of $75. It was charged in the Information that defendant, on January 16, 1952, did feloniously "tamper with a certain motor vehicle, to-wit: a 1937 Buick Coupe automobile, the property of one Paul White, by removing (certain named personal property) from said motor vehicle, without the permission of said Paul White," etc. The prosecution was under Paragraph 1 of Section 560.175 RSMo 1949, V.A.M.S.

In this Court defendant contends that (1) the Information does not charge the commission of any crime, (2) the evidence adduced does not support the judgment of conviction, (3) the court erred in admitting certain evidence, and in refusing defendant's request for a hearing outside the jury's presence as to the voluntariness of certain statements, and (4) the court erred with respect to giving and refusing instructions.

It appears from the testimony in the case that Paul White on January 16, 1952, owned a certain motor vehicle, the 1937 Buick coupe in question, and about eight p. m. of that day he drove it to and parked it at the Schneider mine about two miles from his home in Macon County; that when he returned to his 1937 Buick coupe about five hours later his two fog lights, his back up light, his defroster fan, all his tools, his bumper jack, and his 1952 license were gone from the car; that he did not give any permission to defendant or to anyone to remove any of the above things from his car; that there was also gasoline in the gasoline tank of his car; that the above articles were in or attached to his Buick car when he parked it at the mine; and that Paul White immediately reported the above matters to the Highway Patrol.

It also appears that defendant Vernon John Wood, William Slagle, (the latter 19 years of age) Harold Hartshorn, Charles Ridinger, and Mary Mack Pike were at Paul White's Buick car, parked near the Schneider mine between ten and eleven p. m. on January 16, 1952; that defendant siphoned gasoline out of the tank of Paul White's car and took the 1952 license plate tag off of the license attached to the Paul White Buick; that the gasoline taken out of the tank of Paul White's Buick was "put in Charles Ridinger's car"; that William Slagle and "another kid * * * removed the fog lights and such as that," the back up light, the defroster, jack and tools from Paul White's Buick; that Mary Mack Pike was just "sitting in the car" of Charles Ridinger.

Defendant's first contention respecting the Information, and all of his argument advanced in support of it, we have considered and ruled adversely to him in Case No. 43800, State of Missouri v. Ridinger, Mo.Sup., 266 S.W.2d 626, decided concurrently herewith. The contention that the

Information did not charge the commission of a crime is accordingly denied.

■ It is next contended by defendant that the instant facts do not support the judgment of conviction. For the reasons stated in Case No. 43800, State of Missouri v. Ridinger, supra, we rule that the facts of this case, showing as they do that defendant removed gasoline and the state license tab from the above motor vehicle of Paul White without the permission of Paul White so to do, are sufficient to support the verdict of the jury and the judgment of conviction.

We next consider defendant's contention that the court erred in the admission of certain testimony. The evidence in the case discloses that after dark on the night in question William Slagle and Harold Hartshorn, in Harold Hartshorn's motor car, drove to the Schneider mine and drove up by White's Buick car; that when they arrived there, the defendant Wood, Charles Ridinger and Mary Mack Pike were already there, having come there in Ridinger's automobile; that when Slagle and Hartshorn arrived there the defendant and Ridinger were siphoning gasoline out of the gasoline tank of the Paul White Buick and putting it in the tank of the Ridinger automobile; and that thereafter defendant Wood took the 1952 license tag off of the Paul White Buick. William Slagle testified in part:

"Q. Tell the jury why you and Harold Hartshorn stopped when you saw the other folks there? A. We saw them there and we was kind of looking for them anyway. * * *

"Q. When you stopped there, tell the jury, when you were doing what you did, when they were doing what they were doing? A. Well, they were there and we recognized them and we got out and talked a little bit and just saw what they were doing and we just started in too. * * *

"Q. And then you all went to work on the (Paul White) car? A. Yes. * * *

"Q. If you know, will you tell the jury with whom Mary Mack Pike was with that night?

"By Mr. Powell (counsel for defendant): I object to that, Your Honor.

"Repetition. It has been established that one car came out there loaded up with one group of passengers and another car came out there loaded up with another group. That has already been gone over.

"By The Court: Overruled. He may answer. A. Well, she was with both of them. She was mainly with Vernon Wood.

"By Mr. Powell: I object to that. He doesn't know who she was mainly with. A. Well, she was with Red (the defendant Wood)."

It is defendant's argument here as to the above, that who the girl Mary Mack Pike was with at the time, was not material, relevant or admissible and that it served only to inflame and prejudice the jury against defendant. Paul White lived about nine miles south of Bevier, Missouri, in Macon County, and out in the country. The Schneider mine was also out in the country about two miles from Paul White's home. From the evidence the jury had the right to infer that all these young people had planned to meet that night for some purpose. Inasmuch as they did meet there in a rural area at the mine by Paul White's car the jury could reasonably infer that all had made previous plans to do so. The record shows that the four young men tampered with the Paul White motor vehicle by stripping personal property from it. Mary Mack Pike was there with them while they were doing that and it does not appear that she made any objection or that she remonstrated with any of them for removing anything from the White motor vehicle. Mary Mack Pike came there in company with the defendant. The testimony also shows that she was still with the defendant and Ridinger in Ridinger's car between two and three o'clock on the early morning of January 17, 1952, east of Clarence, Missouri, on Highway 36, when the car had a flat tire and had on it a 1952 license tag not issued for that car.

■ Under the circumstances above it was within the scope of pertinent inquiry t̃

ask about Mary Mack Pike, with whom she was on that evening and her purpose in being present. She was present during the removal of the property from the White car. Her connection with the offense being perpetrated, and with the parties tampering with the Buick, was a matter as to which the court and jury were entitled to information. We rule that it was not prejudicial error to permit the inquiry to be answered. In any event, the only objection made to the question was that it was repetition. That objection was not well taken and no valid objection was made. The instant contention of defendant is denied.

Defendant next asserts that the trial court "erred in not granting appellant's request for a hearing out of the presence of the jury on the voluntariness of his (defendant's) alleged statements." The defendant was arrested at his father's home about five miles southwest of Macon, about eight thirty p. m. on February 24, 1952, by Trooper James R. Davis, of the State Patrol and Deputy Sheriff Hamilton. His father and family were present when defendant was arrested and came out into the yard with him. He was taken in a Patrol car to the division headquarters building of the State Patrol in Macon for questioning. Defendant was told that the officers desired to question him. During the testimony of Trooper Davis on the trial of the case, he was asked by the State's attorney what defendant had told him about the stripping of the Paul White automobile. The answer of the Trooper was interrupted by defendant's counsel and the following occurred:

"By Mr. Powell: I object to this conversation. I guess what it is supposed to be, unless it is shown to be voluntary. No showing here that he was advised of his constitutional rights not to give evidence against himself. Unless he was afforded an opportunity to speak to his folks or counsel.

"By the Court: Do you claim it is involuntary?

"By Mr. Powell: I think it is very possible it was. *If you would like to dismiss the jury and go into that.*

"By the Court: Well, you may ask him the general questions, as to whether any promises were made or any threats."

Trooper Davis testified that no promises, threats, inducements or statements that defendant would be treated leniently were made to defendant; deputy sheriff Hamilton also so testified. Upon cross-examination of Mr. Davis, he was asked:

"Q. Did you advise him (defendant) that he didn't have to tell you anything at all? You don't remember advising him to that effect? A. Well, I don't know whether we made that—whether—Yes, we did, we told him he didn't have to make a statement to us or not, it was immaterial to us." The witness also testified:

"Q. Trooper Davis, at that time when you were with Trooper Ferguson and whoever else was with you, went down and picked up Red (the defendant), did he ask you at the home to talk to a lawyer, or to talk to a friend, or anything of that kind? A. No, he didn't.

"Q. Did he make any request of that kind while you were questioning him at the Patrol station? A. No, he didn't."

The above record of the trial, which discloses that defendant's counsel *did not* make a request for a hearing out of the presence of the jury, of itself disposes of the instant contention. It is noted, however, that defendant was advised he did not have to make any statement and that no promises, threats or inducements were made to him. There was no testimony anywhere in the case to the contrary. Statements respecting one's connection with the commission of an offense are not rendered involuntary because the defendant is under arrest or in custody of police authorities when questioned with respect thereto. State v. Bartlett, 359 Mo. 881, 224 S.W.2d 100. The fact that defendant was not represented by counsel and was not advised that what he might say might be used against him do not render a defendant's statement inadmissible where the proof

does not indicate that improper procedures were used to induce defendant's statement and there is nothing tending to show the statement was not a voluntary one. State v. Pippin, 357 Mo. 456, 209 S.W.2d 132, 134; State v. Hinojosa, Mo.Sup., 242 S.W.2d 1. The instant contention is without merit and is denied.

We come now to the question of the instructions. It is assigned that the court erred in failing to instruct the jury properly on all the law of the case. Such assignment in paragraph 10 of the motion for new trial, and as reassigned in defendant's brief does not preserve anything for appellate review. It is also assigned that the trial court erred in failing to give "an instruction defining tampering, or the crime tampering, or 'tampering by removing.'"

■ The record shows that before the instructions were read to the jury Mr. Powell, defendant's counsel, stated, outside the presence of the jury: "I want the record to show that I requested an instruction defining 'tampering.'" But it nowhere appears that the defendant offered any written instructions which the court refused to give. A request for an instruction consists of preparing and presenting to the court a written instruction and in asking the court to give it. The trial court may not be convicted of error in not preparing and giving of his own motion an instruction on a subject "in the hope that it would cover the matters which counsel might have had in mind." State v. Martin, Mo.Sup., 260 S.W. 2d 536, 547. Complaint is not here made of the propriety of *any* given instruction. Defendant's instant complaint, as above noted, is that the trial court did not define "tampering" or "tampering by removal."

■ In instruction 1 the jury was instructed that if the jury found that defendant "did wilfully and feloniously tamper with a 1937 Model Buick Coupe Automobile (owned by Paul White) by then and there removing" certain named articles, etc., without Paul White's permission, then the jury would find defendant guilty. Defendant contends that under instruction 1 the jury had to decide whether in law the act of removing the articles constituted the crime of tampering within the meaning of the statute. We do not agree with that contention. Instruction 1 is not susceptible of any such construction. Defendant argues that "if removing parts from a motor vehicle constitutes 'tampering' within the meaning of the statute the *court* must so find." Removal of parts from a motor vehicle does constitute tampering, and we have so ruled hereinabove, and in Case No. 43800, State of Missouri v. Ridinger, decided concurrently herewith. And the trial court in this case did find that the removal of these parts from the Paul White motor vehicle did constitute tampering. The trial court after so finding and so ruling that question of law by overruling defendant's motion for a directed acquittal, then submitted this case to the jury, and gave the jury instruction 1, above, which submitted to the jury, not the question of law of whether the removal of parts from a motor car was tampering, under the statute, but the question of fact of whether defendant removed the parts from the motor vehicle of Paul White.

■ Whether requested to do so or not the trial court must instruct the jury, in writing, upon all questions of law arising in the case as to which the jury must have information to reach their verdict. The trial court did so in this case. We have examined all the instructions. Defendant's assignments as to instructions are without merit and must be overruled.

We have examined the matters of the record proper. The indictment, verdict and judgment are in form and are sufficient. The judgment is responsive to the jury's verdict and to the evidence. Defendant was ably defended and had a fair trial. The testimony clearly established his guilt as charged. The judgment of the circuit court must be and is hereby affirmed.

All concur.