STATE OF MISSOURI, Respondent, v. ORVILLE LEE RIDINGER, Appellant, No. 43800—266 S. W. (2d) 626.

Division Two, March 8, 1954.

Motion for Rehearing or to Transfer to Banc Overruled, April 12, 1954.

*James Glenn* for appellant.

*John M. Dalton,* Attorney General, and *Hugh P. Williamson,* Assistant Attorney General, for respondent.

686

■ CONKLING, J.—Orville Lee Ridinger, herein called defendant, appealed from a judgment of the circuit court of Macon County finding him guilty "in manner and form as charged in the Information." Defendant was sentenced to a term of six months in the County Jail. A jury trial had been waived. It was charged in the Information that defendant did feloniously, wilfully and unlawfully tamper with a certain described motor vehicle "by removing one tire and wheel from said motor vehicle without the permission," of the owner. The prosecution was under Paragraph 1 of Section 560.175, RSMo 1949, V.A.M.S. The defendant offered no testimony and the cause was submitted solely upon testimony offered by the State. In his brief and in his oral argument here defendant assigned as grounds for reversal of the judgment that (1) the Information did not charge the defendant with the commission of any crime, (2) the evidence did not establish a violation of Section 560.175, (3) there was no proof that the A. J. Noll Motor Company, alleged to own the vehicle from which the tire and wheel were removed, was a corporation, (4) and that there was no proof that a "motor vehicle" was tampered with, it being contended by defendant that the school bus in question was not a motor vehicle within the statute.

In Section 560.175, V.A.M.S., it is provided in paragraph 1 thereof, that "No person shall drive, operate, ■ use or tamper with a motor vehicle or trailer without the permission of the owner thereof." And in Section 560.180, V.A.M.S., a violation of the above paragraph 1 of Section 560.175 is made a graded felony.

It appears from the testimony that on February 18, 1952, the A. J. Noll Motor Company, of Macon, Missouri, owned a 1937 Chevrolet bus which was then standing on the east side of and behind its garage which was located on Highway 63, in Macon; that the bus had 20 inch wheels and 7.00-20 tires; that no permission had been given to anyone to tamper with the bus or to remove a tire and wheel therefrom; that in February, 1952, the bus in question had no license plates on it, had been there on the lot "a while" and had not been used "for quite a bit"; that the bus was not on the lot for sale but had been discarded and the Motor Company was using parts from the bus "to repair other vehicles"; that there was no hood over the motor and no left front wheel or tire thereon; and that the bus was not then in a condition to be self-propelled.

It also appears that on the night of February 18, 1952, defendant, accompanied by William Slagle, went to the lot where the bus in question was sitting to remove a wheel and tire therefrom; that defendant jacked up the front of the 1937 Chevrolet bus, removed the lugs from the right front wheel thereof with a socket wrench, pulled that wheel and tire from the bus and took them away.

As to defendant's first contention that the Information did not charge defendant with the commission of any crime, we quote the Information. It charged that defendant Ridinger "did then and there feloniously, wilfully, and unlawfully tamper with a certain motor vehicle, to-wit: a 1937 Chevrolet Bus, the property of A. J. Noll Motor Company, a corporation, by removing one tire and wheel from said motor vehicle, without the permission of said A. J. Noll Motor Company, a corporation, contrary to the form of the statute in such case made and provided and against the peace and dignity of the State of Missouri." The Information substantially follows the wording of the statute set out above, as applicable to the instant facts, and fully apprised defendant of the offense charged. A similar information, charging an offense under this statute, was held sufficient in State v. Anderson, Mo. App., 231 S. W. 1070. See also, State v. Ryan, Mo. App., 289 S. W. 13, and State v. Wahlers, Mo. Sup., 56 S. W. (2) 26. We rule that this Information charged the commission of a crime under and within the meaning of the statute.

In support of his second contention that the evidence here does not establish a violation of Section 560.175, defendant argues that by the enactment of Sections 560.165 and 560.170, the General Assembly "removed the act here complained of (and shown by the instant evidence) from any definition of 'tamper'." The effect of defendant's contention is that the instant act of defendant, in removing the wheel and tire from the bus, was not "tampering" with the bus within the meaning of Section 560.175. Section 560.165 makes it a felony to *steal or attempt to steal,* take or carry away "any motor vehicle, or any part, tire or equipment of a motor vehicle of a value of thirty dollars or more." Section 560.170 makes it a misdemeanor to *steal,* take or carry away "any motor vehicle tire or any part or equipment of a motor vehicle under the value of thirty dollars." It is argued by defendant that since the value of the instant wheel and tire was not alleged in the Information and proved in the evidence before us, and because thereof there could have been no conviction of defendant under either Section 560.165 or 560.170, and, that since those sections define separate and distinct crimes with different punishments, the legislature intended that such facts as are now before us should be prosecuted, not as the "tampering" with a motor vehicle under Section 560.175, but should be prosecuted under either Section 560.165 or 560.170. It is to be noted that those last two statutes deal with *larceny.*

This contention squarely presents to us the question of whether, in removing the wheel and tire from the 1937 Chevrolet bus, as shown by this evidence, defendant did "tamper" with a motor vehicle within the meaning of Section 560.175. Defendant argues that if we rule the just above question in the affirmative that one so removing a tire and wheel, or any other part from a motor vehicle, may be prosecuted under either the misdemeanor section (560.170) or the graded felony section (560.175), and that it was not intended by the General Assembly that the prosecuting attorney should have that discretion. The Attorney General and counsel for defendant candidly state they have found no case in this jurisdiction, or elsewhere, which defines the word "tamper" as the General Assembly applied that word to a motor vehicle in Section 560.175. And our research has revealed no motor vehicle case which seems apposite. The briefs of each party cite such cases as State v. Mangiaracina, 344 Mo. 99, 125 S. W. (2) 58, and State v. Harper, 353 Mo. 821, 184 S. W. (2) 601. The State's brief cites such cases as United States v. Polonio, 77 Fed. Supp. 768, State v. Bringgold, (Wash.) 82 Pac. 132, and Keefe v. Donnell, (Me.) 42 Atl. 345.

The history of this statute discloses that an Act approved on March 19, 1907, prohibited any person to "take, use, operate or run any motor vehicle without the consent, permission or knowledge of the owner thereof." Laws 1907, page 76. By an Act, Laws 1917, page 411, the words, "tampering with" were added, and a violation thereof was made a misdemeanor. By Laws 1919, page 522, it was provided that "Any person using, operating, driving, injuring, tampering with a motor vehicle without the permission of the owner of such motor vehicle shall be deemed guilty of a felony." Since the enactment appearing at Laws 1921, First Extra Session, page 102, the present Act as it now appears as Section 560.175 has remained unchanged.

We find no merit in the argument in defendant's brief that if it be ruled that the removal of parts, such as a wheel or tire, or other parts, from a motor vehicle be held to be "tampering," within Section 560.175, that it "would furnish prosecuting attorneys a powerful club and one the legislature did not intend they would wield." If that were true it would not compel reversal of the instant judgment. Defendant's argument that a violation of Section 560.170 is a misdemeanor and a violation of Section 560.175 is a graded felony is of no force. The minimum punishment under either section may be a fine of only one dollar. In State v. Mangiaracina, supra, relied on by defendant, the information in a single count charged defendants with the felonious *larceny* of an automobile valued at $500, the property of one Brueck, and also with the larceny of fifty-four fur coats of the value of $3,000, the property of Rubins Furs, Inc. The ruling of that case was that the information there was bad for duplicity, and that defendants were entitled to have the two separate larcenies charged in sep-

arate counts inasmuch as the two larcenies charged were denounced by separate statutes, calling for separate and distinct punishments. The instant Information charges not a larceny, but a *tampering*, by removal of a wheel and tire. If this Information had charged a tampering by larceny from a motor vehicle there might be some force to defendant's argument that the prosecution in fact should have been under either Section 560.165 or 560.170. Likewise, in State v. Harper, supra, the charge was that of larceny. Neither the Mangiaracina case nor the Harper case rules the instant contention.

We have concluded that the facts of this case constitute a tampering, as the word "tamper" is used in Section 560.175. The General Assembly originally inserted the words "tampering with a motor vehicle" in the statute for a definite purpose. The offense of "tampering" has been retained in the statutory law since 1917. "Tamper" is a word of common usage. While the legislature could have defined or limited the meaning of the word "tamper" in the statute had it so desired, such was not done. "Tamper" is nevertheless a word of general understanding. In United States v. Polonio, supra, the court had before it a criminal action brought under a federal statute which provided that "whoever * * * shall tamper with the motive power" of a vessel of "foreign registry * * * within the jurisdiction of the United States" shall be punished. The conviction of Polonio, master of the vessel, was sustained. In there discussing the meaning of the word "tamper" the court said: "The definitions of the word itself connote secrecy and scheming or plotting. The definition in Webster's New International Dictionary (Merriam), 2nd Edition, which squarely fits the language of the indictment and which was used by the Court in its instructions is: '3. To meddle so as to alter a thing; esp., to make corrupting or perverting changes, as to *tamper* with a document or a text; to interfere improperly'. " See also, Giugni et al. v. United States, 127 Fed. (2) 786, and Bersio et al. v. United States, 124 Fed. (2) 310, 314. In Keefe v. Donnell, supra, it was held that the word "tamper" in a criminal statute means "to make objectionable and unauthorized changes."

By the enactment of legislation specifying a wide variety of offenses with respect to motor vehicles, and by the apparent severity of some of the punishments provided for such offenses, the General Assembly in this motor age seems to have recognized motor vehicles as personal property of a species, class and character for special consideration and treatment. For instance, the larceny of a motor vehicle, or of any part or equipment thereon, valued at more than thirty dollars, may be punished by imprisonment for not exceeding twenty-five years. Section 560.165. But other forms of grand larceny may be punished only by imprisonment for not exceeding seven and five years. Section 560.-160. The larceny of any equipment on a motor vehicle valued at less than thirty dollars may be punished by a jail sentence of not exceeding

one year. Section 560.170. The unauthorized driving, operating, use or tampering with a motor vehicle, Section 560.175, may be punished by imprisonment not exceeding five years. Section 560.180. And even the unauthorized climbing upon or into or swinging upon either a standing or moving motor vehicle, or the unauthorized sounding of the horn thereon, or the unauthorized attempt to manipulate any of the levers, starting devices, brakes or machinery, or the unauthorized setting of the machinery in motion, or the unauthorized holding to a motor vehicle while riding a bicycle, may be punished by imprisonment in the county jail for two years. Sections 560.175, 560.180. The removal, altering or defacing of numbers on any part of a motor vehicle, or even upon tires; the use of voided license plates; the counterfeiting or alteration of license numbers; and even the sale of a motor vehicle for junking purposes without notice to the State are all made offenses by our statutes.

It is apparent that it is the legislative intention that this special class of mobile personal property, seemingly so necessary in today's economy and now in such common use, deserves the law's special consideration and protection. The legislature has clearly indicated that it is the public policy of this State to prohibit and make statutory offenses all such acts of others done with unlawful intent which tends to interfere with the rights of the owners of motor vehicles to the peaceful possession, use, enjoyment or mobility of this class of property. The fact that the statute forbids tampering with a motor vehicle is a convincing indication of such legislative intent. To "tamper" with a motor vehicle, may be many things. Some may be serious, some clearly not serious; some major and some minor. Under the present statute whether the act done is "tampering" is a judicial question. And upon conviction, the punishment to be assessed may vary from a fine of one dollar to five years' imprisonment. But we may not here say what act or acts, not now before us, may or may not be held to be tampering. Various acts have been before the courts. State v. Ryan, supra, State v. Wahlers, supra, Acton v. State, 104 Tex. Cr. 75, 282 S. W. 805, People v. Score, 48 Cal. App. (2) 495, 120 Pac. (2) 62, Sekat v. State, 218 Wisc. 91, 260 N. W. 246.

We conclude under this evidence that the act of defendant in removing the instant wheel and tire, which of itself would render any motor vehicle immobile, was within the intent of the General Assembly in the use of the words "tamper with a motor vehicle," as those words are used in Section 560.175. To take from a motor vehicle a wheel and tire renders it just as immobile and just as incapable of being operated, and just as effectively destroys the function for which it was manufactured and purchased, and for which it is owned, as would tampering with it by rendering useless its ignition system or its carburetor or destroying its battery or motor.

Defendant's above contention that the evidence of record and now

before us does not establish a violation of Section 560.175 must be denied. The evidence before the Court was sufficient to support the judgment of conviction.

■ Defendant next contends that there was no proof that the A. J. Noll Motor Company was a corporation. We cannot agree with the defendant as to what the testimony in the case tends to prove. It is our view that the testimony of the witness John Massey sufficiently established that the A. J. Noll Motor Company was a corporation. In any event, a similar contention was made in State v. Dowling, 360 Mo. 746, 230 S. W. (2) 691, (1950), wherein we approved what was said in State v. Hedgpeth, 311 Mo. 452, 278 S. W. 740, 741, as follows: " 'Proof of the appellant's guilt of the crimes charged, or either of them, did not depend upon establishing the fact of the oil company's incorporation, but upon the question as to whether the appellant feloniously broke into the premises of another, and, to establish the larceny, that he stole from such premises the property described in the charge. While the corporate existence of the oil company was alleged in the information, it was a mere matter of description to enable the owner to be more readily identified. Whether, therefore, the owner of the premises be a corporation, a partnership, or an individual is not material to the appellant's defense or in the establishment of his guilt.' " (Citing cases.) This contention is without merit.

■ We come now to defendant's final contention that the bus from which defendant removed the wheel and tire in question was not a motor vehicle within the statute. Defendant bases his argument on the facts appearing above in the third paragraph of this opinion.

The term "motor vehicle" includes a bus. Section 303.010, Shipp v. Georgia Power Co., 67 Ga. App. 867, 21 S.E. (2) 458, 459. The term "motor vehicle" is different from and is broader than the word automobile. City of Dayton v. De Brosse, 62 Ohio App. 232, 23 N. E. (2) 647, 650. Our statutes in Section 303.010 define "Motor vehicle" as, "Every self-propelled vehicle which is designed for use upon a highway," etc. That statute makes certain exceptions not pertinent here.

Defendant's brief states that he "does not wish to be understood as saying that a car temporarily not capable of being self-propelled is not a motor vehicle within the meaning of the statute," but that he "does contend that a reasonable line must be drawn and that the alleged bus in this case falls below the line of anything that could be legitimately classified as a motor vehicle." When defendant's counsel raised this question in the trial court, that court observed: "You make the point that this was not a motor vehicle. Well, the statute doesn't provide that the motor vehicle shall be in running or operating condition. It doesn't require that it shall be in good repair. It merely requires that it should answer the description of a motor vehicle, and so, I think that the proof here was sufficient, though the motor vehicle was not in use."

692

In State v. Tacey, 102 Vt. 439, 150 Atl. 68, 69, 68 A.L.R. 1353, the court considered facts where an intoxicated person was at the wheel of and was guiding his own motor car, which was then being towed by a tow car because his car was not in condition to be operated, would not run and had to be towed and therefore was not self-propelled. Defendant there contended that inasmuch as his vehicle was not self-propelled and could not be operated it was *not a motor vehicle* within the statute forbidding operation of a motor vehicle by an intoxicated person. The applicable statute there provided that the words "motor vehicle" shall include "all vehicles powered by other than muscular power." In denying the above contention, the court, in part, said of defendant's automobile: "Manifestly it was the design, mechanism, and construction of the vehicle, and not its temporary condition that the legislature had in mind when framing the definition of a motor vehicle. Neither the authorities nor sound logic admit of a different conclusion." See also, Rogers v. State, (Tex.) 183 S. W. (2) 572, Commonwealth v. Clarke, 254 Mass. 566, 150 N. E. 829, 5 Am. Juris., page 918, section 772, State v. Lansing, 108 Vt. 218, 184 Atl. 692, 694.

"Motor vehicle" is a generic term. The curious may read of the origin, development, modern acceptance, use and application of the term in 60 C. J. S., Motor Vehicles, § 1, p. 109, and in Jernigan v. Hanover etc. Ins. Co., 235 N. C. 334, 69 S. E. (2) 847. It is a matter of common knowledge and every day observation that on the used car and outdoor show and display lots of the State, on lots adjoining garages, and in countless yards and various premises in this State, both rural and urban, stand unnumbered thousands of motor vehicles of every description, many in various conditions of disrepair. But few of them stand ready to operate or could otherwise qualify as "self-propelled," but they nonetheless are "motor vehicles." Clearly it was not the legislative intent to exclude such motor vehicles from the protection of the "tampering" statute. If such had been the legislative intention, it would have been simple enough for the law-making body to have added to the statute a proviso in appropriate words to the effect that Section 560.175 was not applicable to motor vehicles not in good running or operating condition or repair and not ready to be driven away.

We have concluded that the mere facts, strongly urged upon us by defendant, that the bus had no current state license, that there was no intention of the owner thereof to further use it as a bus and that it was being used as a source of spare parts to be placed in other motor vehicles as occasion therefor might arise, did not destroy the bus as a "motor vehicle" or convert it into a mere object of public plundering and stripping, and beyond the pale of the law's protection. The statute in question, the clear legislative intent, and the sound logic of the situation support us in this conclusion.

The matters of record proper have been examined. The indictment and judgment are in form. The defendant was well represented in the trial court and in this court. The testimony in the case established his guilt. The judgment of the circuit court must be and is hereby affirmed. All concur.