**Jose TREVINO, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 04–84–00144–CR.**

Court of Appeals of Texas,
San Antonio.

Sept. 11, 1985.

Jose J. Tavarez, Moore & Associates, Del Rio, for appellant.

Thomas F. Lee, Dist. Atty., Del Rio, for appellee.

Before BUTTS, CANTU and REEVES, JJ.

OPINION

REEVES, Justice.

This is an appeal from a conviction of burglary of a motor vehicle. Trial was to

the court; punishment assessed was three years' confinement in the Texas Department of Corrections.

Appellant asserts three grounds of error. They are:

(1) Insufficiency of the evidence;

(2) Failure to prove that the defendant entered a vehicle as that term is defined in the Texas Penal Code; and

(3) The judgment entered finds the appellant guilty of the offense of burglary of a building and burglary of a motor vehicle.

The alleged burglary took place on September 9, 1983, at Lozano's Car Lot which is situated at the corner of Ellis and Las Vacas Streets, Del Rio, Texas. The day before, appellant had gone to Lozano's Car Lot in search of a transmission. He had been shown a transmission in the trunk of a 1977 Chevrolet Monte Carlo. The car was not operational as the motor had been removed.

■ On the evening of September 9, Maria Velasquez, who then resided in a house situated across the alley from the car lot, heard a noise that sounded to her like a car driving slowly up the alley. Upon looking out a rear window of her house, she saw a silver Pontiac with a maroon landau top slowly proceeding up the alley. Although it was dark, only the parking lights were on. The car came to a stop behind the car lot; a man got out of the car and entered the car lot premises; the car was then driven out of the alley.

A short time later, she heard a noise that sounded like a hammer hitting on metal and then a loud whistle. Soon thereafter, she observed the same Pontiac drive slowly up the alley and stop. The man who had originally entered the car lot returned, stuck his head in the car as if to talk to someone, and then returned to the car lot with another man who had exited from the Pontiac. Concluding that a burglary was in process, Mrs. Velasquez went to the rear of the alley to try to obtain the license number of the Pontiac. She testified that the lighting was adequate for her to see the license plate number, FPF 596.

At this time she saw the two men return to the Pontiac carrying an object which they placed in the trunk of the Pontiac. The witness was unable to see the faces of the two men, but described the man who had first entered the lot as about five foot, eleven inches in height, broad in the shoulders, and heavy set around the stomach. He was wearing a shirt, long pants, and sandals with thick soles. The men were unable to close the trunk of the Pontiac, so they drove off with the trunk open.

Approximately fifteen minutes later Mrs. Velasquez saw the same Pontiac parked on Las Vacas Street. She stated the car remained parked there for a short time after which it left and turned on Ellis Street where it stopped.[1] The witness testified that when she next saw appellant, the police had stopped him on Ellis Street. He was in a truck and his hair was wet. He had changed clothes and was wearing shorts, but he had on the same type of sandals as before. When asked if this was the same man she saw loading the object into the trunk of the Pontiac, she answered in the affirmative.

At the trial, Flores, the owner of the car lot, identified appellant as the same man who had appeared the day before in search of a transmission and had been shown the transmission in the rear of the Monte Carlo which was later found to have been burglarized. The police officer who answered the burglary call testified that appellant accounted for his presence on Ellis Street by stating that he had come to get his automobile, the Pontiac. The Pontiac still had parts of a transmission in the trunk; there was transmission fluid in its trunk and on its bumper. A trail of transmission fluid led from where the Monte Carlo was situated toward the alley where the witness had seen the Pontiac parked.

1. The statement of facts does not reveal why the Pontiac stopped on Ellis Street. The trial court surmised that perhaps the Pontiac broke down.

In reviewing the sufficiency of the evidence, the appellate court never substitutes its judgment for that of the trial court. We review the evidence in the light most favorable to the prosecution to ascertain if a rational trier of the facts could have found the essential elements of the crime beyond a reasonable doubt. *Foster v. State*, 635 S.W.2d 710, 718 (Tex.Crim.App. 1982). Using that standard of review, we are of the opinion that the evidence is sufficient to establish plaintiff's guilt of burglary of a motor vehicle beyond a reasonable doubt.

Ground of error number one is overruled.

■ Appellant next contends that since the Chevrolet Monte Carlo was inoperable due to the removal of the motor, it does not meet the Penal Code definition of a vehicle. According to the appellant, the State therefore failed to prove the allegations in the indictment. It is necessary for the State to prove not only the essential elements of an offense, but also the descriptive elements set forth in the indictment. *Weaver v. State*, 551 S.W.2d 419 (Tex.Crim.App.1977); *Burrell v. State*, 526 S.W.2d 799 (Tex. Crim.App.1975). The indictment in this cause states that the appellant did "with the intent to commit theft, intentionally break into and enter a vehicle, to-wit: a Chevrolet Monte Carlo." Section § 30.-01(3) of the Texas Penal Code (Vernon 1974) defines a vehicle as:

> ... any device in, on, or by which any person or property is or may be propelled, moved, or drawn in the normal course of commerce or transportation, except such devices as are classified as 'habitation.'

We have found no Texas authority, nor has either side referred us to any Texas cases distinguishing an immobilized vehicle from a "vehicle" as defined in the Penal Code.

The Missouri Supreme Court has determined, however, that the term "motor vehicle" as defined in that state's "tampering" statute, included a bus which was in the process of being dismantled and was being used as a source for spare parts.

*State v. Ridinger*, 364 Mo. 684, 266 S.W.2d 626 (Mo.1954). The bus involved had not been used "for quite a bit," had no left front wheel, had no hood, had no license plates, was the source of spare parts for the repair of other vehicles, was not then in a condition to be self-propelled, and the owner had no intention to use it as a bus. The statute involved defined "motor vehicle" as "every self-propelled vehicle which is designed for use upon a highway." *Id.* 266 S.W.2d at 631.

The court explained its rationale as follows:

> Manifestly it was the design, mechanism, and construction of the vehicle, and not its temporary condition, that the Legislature had in mind when framing the definition of a motor vehicle. Neither the authorities nor sound logic admit of a different conclusion....
>
> ... It is a matter of common knowledge and every day observation that on the used car and outdoor show and display lots of the State, on lots adjoining garages, and in countless yards and various premises in this State, both rural and urban, stand unnumbered thousands of motor vehicles of every description, many in various conditions of disrepair. But few of them stand ready to operate or could otherwise qualify as 'self-propelled,' but THEY NONETHELESS ARE 'MOTOR VEHICLES.'

*Id.* 266 S.W.2d at 632 (emphasis added).

The court concluded that the mere facts that the bus was in disrepair and that the owner of the bus had no intention to further use it as a bus did not destroy the bus' character as a "motor vehicle." We likewise conclude that the fact the Monte Carlo was motorless does not, standing alone, change its character as a vehicle.

Ground of error number two is overruled.

■ Lastly, appellant contends, and the State concedes, that the judgment states in one portion that the appellant is guilty of the offense of burglary of a motor vehicle and in another portion provides that the

defendant "has been adjudged guilty of the offense of burglary of a building." Moreover, in reviewing the judgment, we find that the first paragraph of the judgment states that appellant is not guilty of the offense charged in the indictment, while the second paragraph states that he "is guilty of the offense of burglary of a motor vehicle."

However, the statement of facts contains the following: "Jose Trevino, the court finds you guilty of burglary of an automobile as charged in the indictment." Article 44.24(b) of the Texas Code of Criminal Procedure (Vernon 1979) authorizes this court to reform and correct a judgment, as the law and nature of the case may require. Because the judgment and the sentence reflect appellant was found guilty of the offense charged in the indictment, the judgment is herewith reformed and the erroneous recitations in the judgment are herewith deleted. *See Milczanowski v. State*, 645 S.W.2d 445 (Tex.Crim.App.1983).

The judgment of the trial court is affirmed.