STATE of Missouri, Plaintiff-Respondent,

v.

N. J. BOZE, Defendant-Appellant.

STATE of Missouri, Plaintiff-Respondent,

v.

Kenneth J. SICKMAN, Defendant-Appellant.

STATE of Missouri, Plaintiff-Respondent,

v.

Rufus L. HUNTER, Defendant-Appellant.

STATE of Missouri, Plaintiff-Respondent,

v.

John C. WARLICK, Defendant-Appellant.

Nos. 34011–34014.

St. Louis Court of Appeals,
Missouri.

Sept. 28, 1971.

Hullverson, Richardson & Hullverson, Orville Richardson, St. Louis, for defendants-appellants.

David A. Dalton, Andrew H. McColloch, St. Charles, Robert Wohler, John T. Bruere, St. Charles, for plaintiff-respondent.

SMITH, Commissioner.

These cases all arise from convictions in the circuit court (on change of venue from the magistrate court) for violations of Section 304.180 [1] regulating weights of vehicles using Missouri highways. The cases were consolidated for trial before the court below, and have been consolidated for briefing and argument here. We will dispose of all four cases in this opinion.

Appellants have stated that the issues before us are two in number, viz:

(1) If the weight carried on a "tandem axle" does not exceed 32,000 pounds, may the weight on any single axle of such a tandem axle group exceed 18,000 pounds under § 304.180?

(2) May an individual truck driver be convicted of violating § 304.180 without evidence and a finding that he knowingly or intentionally violated the law?

Defendants are all truck drivers operating auto transport vehicles. The tractor and trailer combinations contain a front axle on the tractor, a rear tandem axle group on the tractor and a rear tandem axle group on the trailer. Each was weighed in June 1969, at a Missouri weight-station at St. Peters, Missouri, while traveling on Interstate 70 from Kansas City, Missouri. Defendants Boze, Hunter and Warlick were "split-weighed" meaning that each axle of a tandem axle group was weighed separately. Although in each case the total weight of the tandem group was within the 32,000 pound limit provided by § 304.180, one axle within such tandem exceeded 18,000 pounds, the limit imposed for single axles by that section. The informations against these three defendants were based upon exceeding the 18,000 pound single axle limit. Defendant Sickman was found in violation for having a tandem axle weight in excess of 32,000 pounds. As to him, only issue number (2) relating to intent and knowledge is involved.

The state introduced no evidence of intent to violate the law by any defendant or of knowledge that in fact their vehicles were in violation of § 304.180. Defendants introduced substantial evidence to establish lack of intent or knowledge. It was stipulated that defendants were operating the vehicles on the date of the alleged violations, over Interstate 70 in Missouri. The weights on the axles and tandems claimed to be in violation were also stipulated. Defendants were each found guilty and fined. The trial court prepared a "Court's Memorandum and Judgment" which has been most helpful to this court.

We are here dealing with a statutory enactment. In determining the meaning to be given the statute we are guided at all times by the chief canon of statutory construction and interpretation " * * * to reach the true intent and meaning of the law-making authority, as expressed in the language it has employed to convey the thought." State v. Schwartzmann Service Inc., 225 Mo.App. 577, 40 S.W.2d 479 [1–

---

1. All statutory references are to RSMo 1969 (V.A.M.S.) unless otherwise indicated.

3]. And as we stated in that case dealing with the truck weight laws: "The purpose of the statute, manifestly, is to protect the highways of the state from the damage that may be done by vehicles of excessive weight."

Before turning to the specific statutes involved in these appeals, some brief reference to the history of § 304.180 is warranted. In 1921 Missouri first enacted size and weight regulations applicable to trucks operating on the highways in the state. Laws 1921 (Extra Session) p. 76, § 20, 1. c. 91. In 1925 the legislature enacted the predecessor of § 304.180. Laws 1925, p. 295, § 2. It provided essentially three weight limitations: (1) gross weight (38,-000 lbs. for tractor and semi-trailer), (2) single axle load (16,000 lbs.) and (3) pounds per inch of tire in contact with the highway (600 lbs.). In 1943 the provisions were amended in three major respects: (1) the gross weight was based upon a formula involving the length of the vehicle, (2) although the 16,000 lbs. single axle limit was retained for high pressure tires, low pressure tires could carry 18,000 lbs. per single axle and (3) limitations on the weight of groups of axles within 18 feet of each other were imposed on a formula basis. Laws 1943, p. 663, § 8406, 1. c. 667. In 1951 the section was again amended to provide for a maximum load in pounds on groups of axles determined by the distance in feet between the first and last axle of the group. Between 4 feet (48 inches) and 7 feet (84 inches) the maximum load was 32,000 lbs. for the group. This group weight was specifically made subject to the "limit upon the weight imposed upon the highway through any one axle * * *" Laws 1951, p. 695, § 304.180, 1. c. 704.

In 1963 Missouri added another paragraph to the section providing: "Nothing in this act [section] shall be construed as permitting lawful axle loads, tandem axle loads or gross loads in excess of those permitted under the provisions of section 127 of title 23 of the United States Code." Laws 1963, p. 417, § 304.180.

The weights prohibited by that federal statute on highways in the interstate system were: " * * * weight in excess of eighteen thousand pounds carried on any one axle, or with a tandem axle weight in excess of thirty-two thousand pounds, or with an over-all gross weight in excess of seventy-three thousand two hundred and eighty pounds * * *" 23 U.S.C. 127.

In 1965 the Missouri legislature again amended the section to provide a weight limit for tandem axles as such, defined as being a group of two or more axles 40 to 90 inches apart. That limit was 32,000 pounds. Laws 1965, p. 489, § 304.180.

In 1967 the statute with which we are concerned was enacted and in pertinent part is set out in the margin.[2] The interi-

---

2. "1. No vehicle or combination of vehicles shall be moved or operated on any highway in this state having a greater weight than eighteen thousand pounds on one axle and no vehicle shall be moved or operated on the highways of this state having a greater weight than thirty-two thousand pounds on any tandem axle; the term 'tandem axle' shall mean a group of two or more axles, arranged one behind another, the distance between the extremes of which is more than forty inches and not more than ninety inches apart and further provided, however, that when any vehicle or combination of vehicles with six axles which include a tandem axle group as above defined and a group of three axles which are fully equalized, automatically or mechanically,

and the distance between the center of the extremes of which do not exceed one hundred ten inches, the chief engineer of the Missouri state highway department shall issue a special permit for the movement thereof, as provided in section 304.200, for eighteen thousand pounds for each axle of the tandem axle group and for sixteen thousand pounds for each axle of the group of three fully equalized axles which are equalized, automatically or mechanically, * * *

"2. An 'axle load' is defined as the total load transmitted to the road by all wheels whose centers are included between two parallel transverse vertical planes forty inches apart, extending across the full width of the vehicle.

or group axle limits theretofore provided were eliminated, and the gross weight permitted was based upon the distance between the first and last axle of the vehicle or combination of vehicles.

■ From the above recitation it is clear that since at least 1943 the legislature has been concerned about limiting three basic weights: (1) single axle weight— never over 18,000 lbs.; (2) total weight of groups of axles—never more than 32,000 lbs. where the axles in the group were within four to seven feet of each other; (3) gross weight. Throughout the period, these limitations were cumulative—each had to be complied with or the vehicle was overweight. The reason for this is not difficult to understand. The evil sought to be avoided was the destruction of the public roads by excessively heavy vehicles. It is beyond question that the destructive potential of the weight is determined not only by its amount but by the degree to which that amount is concentrated in one spot or area. The amount of such weight which the legislature determined could be safely borne by a highway within a forty inch plane has never exceeded 18,000 pounds— the single axle limit. When two or more axles are placed in close proximity to each other the amount which could be safely borne was, by the legislative determination, increased but not doubled. Therefore, when such axles were in close proximity a total weight limitation on the group was required. But certainly nothing indicates that an overweight single axle within a group loses its destructive potential simply because it is part of a group. The limitations were therefore cumulative.

Defendants advance an ingenious and complicated argument that the enactments in 1965 and 1967 show a legislative purpose to abandon the cumulative effect of the prior weight limits and provide instead that if the tandem axle weight is within the statute, the weight of a single axle within the tandem is of no consequence. We are not convinced.

Section 1 of the statute provides a limit of 18,000 pounds "on one axle." A tandem axle is defined as "a group of two or more axles."

This definition of tandem axle does not indicate that the legislature considered a tandem axle as one axle for weight purposes. Further the legislature, in making provision in paragraph 1 of the statute for certain vehicles to operate by special permit allowed a tandem axle weight in excess of 32,000 pounds provided each axle of the tandem group carried no more than 18,000 pounds. Again this evidences the legislative intent that single axle weight, whether separate or in tandem, must not exceed the 18,000 pound maximum. "Axle load" is defined by paragraph 2 of the section as the total load transmitted to the highway by all wheels whose centers are within a forty inch plane. Again no effort was made to define such load in terms of a "tandem axle" or to treat a tandem axle as a single axle for load purposes.

Paragraph 3 establishes the maximum gross weight for the vehicle and is expressly subject to "the limit upon the weight imposed upon the highway through *any one* axle or on any tandem axle." (Emphasis supplied). By definition a tandem axle is not "any one" axle but is a

"3. Subject to the limit upon the weight imposed upon the highway through any one axle or on any tandem axle, the total gross weight with load imposed upon the highway by any vehicle or combination of vehicles shall not exceed the gross weight given for the respective distance between the first and last axle of a single motor vehicle or by the first axle of a motor vehicle and the last axle of the

last vehicle in any combination of vehicles measured longitudinally to the nearest foot as set forth in the following table: * * *

"4. Nothing in this section shall be construed as permitting lawful axle loads, tandem axle loads or gross loads in excess of those permitted under the provisions of section 127 of title 23 of the United States Code. * * * "

group of "two or more axles." Again this language reflects the legislative desire to limit the weight of "any one axle" whether in tandem or not.

Paragraph 4 of the section evidences the legislative intent that the weight limits provided in the section be no more than those provided in the federal statute. The federal statute limits single axle weight "on any one axle," tandem weight and gross weight. We find the legislative intent to be clearly expressed in section 304.180, that the single axle, tandem axle and gross weight limits are cumulative, and each must be complied with. Only if we could find that the legislature intended to define a tandem axle as one axle could we find the contrary. But tandem axle is by definition two or more axles, and nowhere in the statute has the legislature indicated it is to be treated in such a way as to authorize the carrying of more than 18,000 pounds on any one axle within the tandem group. We therefore answer question 1 in the negative.

■ The question of whether intent or guilty knowledge must be shown is again a question of the intent of the legislature. State v. McLarty, Mo., 414 S.W.2d 315 [1–4]. " * * * [I]n the prohibition or punishment of particular acts, a State may in the maintenance of a public policy provide 'that he who shall do them shall do them at his peril, and will not be heard to plead in defense good faith or ignorance.' " State v. Page, Mo., 395 S.W.2d 146 [4, 5].

Section 304.180 provides that "No vehicle or combination of vehicles shall be moved or operated on any highway in this state * * *" having greater weights than prescribed. Section 304.240 provides that: "Any person, firm, corporation, partnership or association violating any of the provisions of sections 304.170 to 304.230 shall be deemed guilty of a misdemeanor. * * * *"

The statutes do not by their express language require either knowledge or intent. The violation made a crime is the operation of overloaded vehicles on the highways of the state. The evil sought to be remedied is the destruction of the highways by overloaded vehicles. The state has the power to say, and we find here has said, that the operation of heavy vehicles on the highways of the state is undertaken at the peril of the individual operating the vehicle. He will not be heard to say in defense that his operation was in good faith or in ignorance. The legislature has tempered this absolute liability slightly by certain provisions of § 304.230 relating to inadvertent shifting of load in transit without fault. Defendants do not contend they have established such defense and we can find no more than evidence that such a shift was possible. But such tempering provisions do not evidence an intention by the legislature to make violation dependent on intent or knowledge. Quite the contrary. If intent or knowledge were a required element of the offense no such tempering provisions would be required at all. We conclude and hold that the state was not required to establish either intent to violate the statute or guilty knowledge of such violation to make a case. We answer question two in the affirmative.

The judgments are affirmed.

PER CURIAM:

The foregoing opinion by SMITH, C., is adopted as the opinion of this court. Accordingly, the judgments are affirmed.

BRADY, P. J., and DOWD and WOLFE, JJ., concur.