**STATE of Missouri, Respondent,**

v.

**Waldo A. TWEEDY, Jr., Appellant.**

**No. WD 39794.**

Missouri Court of Appeals,
Western District.

June 28, 1988.

L.R. Magee, Kansas City, for appellant.

Bruce E. Hahn, Asst. Pros. Atty., Platte City, for respondent.

Before NUGENT, P.J., and CLARK and COVINGTON, JJ.

CLARK, Judge.

Waldo A. Tweedy, Jr., was convicted of driving an overweight vehicle on a state highway in violation of § 304.180, RSMo 1986,[1] and was fined $1105.30. He appeals contending that the evidence was insufficient to support the conviction.

The evidence, consistent with the court's verdict, established that on April 9, 1987,

Tweedy was driving a dump truck loaded with rock on Interstate Highway 29 in Platte County, Missouri. At the Missouri Highway Patrol weigh station north of Platte City, Tweedy requested assistance in locating Highway 45 and, while there, his truck was weighed on the state scales. This activity was being overseen by Dale Pine, an inspector employed by the patrol. Pine was the only witness who testified for the state at trial.

Over objection that no evidence had been introduced showing the accuracy of the scales, Pine testified that the weight on the tandem axles of Tweedy's truck was 45,700 pounds. Pine issued a traffic ticket which charged Tweedy with an overweight violation of 11,700 pounds based on an assumed maximum weight allowance of 34,000 pounds.

Among other arguments, Tweedy contends the state made no case against him because there was no proof of the distance between the axles on his truck and therefore the allowable weight and the overweight may not be calculated. We agree.

Section 304.180 establishes weight regulations for vehicles on primary or interstate highways in Missouri and, in particular, specifies the allowable maximum loads which the axles of the vehicles may bear. The purpose of the statute is to avoid the destruction of the public roads by excessively heavy vehicles. *State v. Boze*, 472 S.W.2d 35, 39 (Mo.App.1971). The general weight limitations appearing in § 304.180.1 are 12,000 pounds on the steering axle and 20,000 pounds on all other axles.

The statute recognizes the fact that many trucks have multiple axles in addition to the steering axle, and therefore weight limits are set for axle combinations, subject always to the limit of 20,000 pounds per axle. The confusion present in the statute and the cause of the problem in this case is the purported definition of "tandem axle."

The word "tandem" has the general meaning of "a group of two or more arranged or following one behind the other." *Webster's Third New International Dic-*

1. All statutory references are to RSMo 1986.

*tionary 2336* (1981). Thus, tandem axles would be two or more axles arranged in a series following each behind the other. Spacing between the axles is not necessarily a component of the general terminology when the words are used in this sense.

Section 304.180.1 undertakes to define the term "tandem axle" in a more restricted way by providing a limitation of the extremes between the outer axles in tandem, whether two or more. Under this subsection, the minimum spacing is forty inches and the maximum is ninety-six inches. A pair of load bearing axles which are more than eight feet apart would therefore not constitute a tandem axle under § 304.180.1, although the arrangement would, in common parlance, be recognized as tandem axles. Section 304.180.1 also sets the weight limit for tandem axles at 34,000 pounds. This is less than the limitation otherwise provided of 20,000 pounds per axle because, by definition, a tandem axle consists of at least two axles.

There is no prohibition in the statute against a series or group of axles separated by more than eight feet. Thus, if the greater distance is between the extremes of two or more axles, the limitation of 34,000 pounds on tandem axles does not apply. This circumstance is recognized in § 304.180.3 which authorizes maximum loads of 38,000 pounds to 80,000 pounds depending on the number of axles from two to six, and the distance between the axles, which must be more than eight feet.

▮ When referring to vehicle weight regulations, the peculiar terminology of § 304.180 requires a specification of whether the term "tandem axle" is used in the narrow sense of § 304.180.1, that is axle distances of eight feet or less between the extremes, or in the sense tandem is normally employed to indicate a series of axles. If a vehicle has a tandem axle as defined in § 304.180.1, then the maximum allowable load is 34,000 pounds. If, however, the vehicle merely has a series of axles, the permissible weight can only be determined by reference to the table in § 304.180.3, and then, only if it be known how many

2. Apparently a mathematical error.

axles there are and the distance separating the first axle from the last.

▮ Turning now to the present case, the violation shown on the traffic ticket referred to § 304.180, RSMo, and contained the description:

| O/W 11,700 lbs. | 12,520 | —S. |
| T. drive axle | 45,700 | —T.D. |
| Allowed 34,000 lbs. | 57,920 | Gross [2] |
| Weighed 45,700 lbs. | | |

Dale Pine, an inspector with the Missouri Highway Patrol, testified as the only witness for the state. He recounted testing the weight of Tweedy's truck. In response to a question as to what the truck weighed, he stated: "Okay. A gross weight of 57,-920 pounds. The steering axle weighed 12,520 pounds, tandem-drive axle, 45,700 pounds." There was no inquiry made and no evidence was introduced to show the number of weight bearing axles on Tweedy's truck and no evidence as to whether the distance between the extremes of the axles was more or less than eight feet. The citation, as noted above, did not inform Tweedy, nor can we ascertain from the record, whether the violation charged was of § 304.180.1 or § 304.180.3.

The penalty for violation of the load limits set out in §§ 304.180 to 304.220 is found in § 304.240. A fine is imposed of two cents for each pound of excess weight up to five hundred pounds, five cents per pound for the next five hundred pounds and ten cents per pound for excess weight above one thousand pounds. To calculate the penalty, it is therefore necessary to know the number of pounds by which the vehicle weight exceeded the maximum limit.

The evidence presented by the state, although arguably showing the weight on the load bearing axles of Tweedy's truck, did not prove a violation of the statute because it did not foreclose the possibility that the load was permissible under § 304.180.3. Under the latter subsection, a configuration of axles is possible which would allow the measured weight of 45,700 pounds. This is not to say that Tweedy

contends here or demonstrated at trial a compliance with the statute. Such was not his burden. It is the obligation of the state to prove the charge in the first instance and, having failed to establish the violation by offering no evidence in the particulars we have noted, a case was not made.

 There appeared to have been some contention by the state at trial, in reference to the subject of the "commercial zone," § 304.190.3, that even by a more relaxed standard, Tweedy's truck was overweight. Under the particular penalties applicable to overweight vehicles as set out in § 304.240, however, it is not enough merely to prove an excess over the maximum allowable weight. The number of pounds by which the permissible weight has been exceeded must be shown by the evidence before the penalty can be assessed. Thus, even were it to appear from this record that some overweight of uncertain amount were demonstrable in Tweedy's case, the judgment could not stand for want of an evidentiary basis to support imposition of a penalty.

The judgment is reversed and appellant is ordered discharged.

All concur.

